## BOARD OF MEDICAL EXAMINERS OF UTAH v. BLAIR.

No. 3503.   Decided February 10, 1921.   (196 Pac. 221.)

1.  PHYSICIANS AND SURGEONS—LEGISLATURE MAY PRESCRIBE QUALIFICATIONS OF PRACTITIONERS. In the exercise of the police power and for the protection of the health and safety of citizens, the Legislature may determine and prescribe the qualifications necessary to practice medicine, surgery, or obstetrics, and, unless the legislative regulations are clearly un-

resonable, discriminatory, or deprive a citizen of some constitutional right or privilege, the courts cannot interfere.[1]

2. CONSTITUTIONAL LAW—WHETHER QUALIFICATIONS FOR PRACTICE OF MEDICINE ARE JUSTIFIED NOT A QUESTION FOR THE COURT. Whether the qualifications for the practice of medicine, etc., defined and required by statute are justified by the facts is not a question for the courts to determine.

3. PHYSICIANS AND SURGEONS—IN SUIT TO ENJOIN CHIROPRACTOR WITHOUT LICENSE, RESULTS OF CHIROPRACTIC TREATMENT IMMATERIAL. In an action under Comp. Laws 1917, § 4449, to enjoin a chiropractor from practicing medicine without a license, the court is not concerned with the good or bad results that may follow treatment by chiropractors, but solely with the question whether defendant is practicing medicine without a license

4. CONSTITUTIONAL LAW—PHYSICIANS AND SURGEONS—STATUTE AUTHORIZING INJUNCTION AGAINST UNLICENSED PRACTICE DOES NOT GRANT PRIVILEGES OR IMMUNITIES. As the right given the Board of Medical Examiners by Comp. Laws 1917, § 4449, to bring suit to enjoin the practice of medicine without a license is conferred for the protection of the health of the community, and not for the protection of members of the so-called medical fraternity, the act does not grant any privilege, immunity, or franchise to an individual, association, or corporation in violation of Const. art. 6, § 26, subd. 16.

5. COURTS—JUDICIAL CONSTRUCTION OF STATUTE REGARDED AS APPROVED BY PEOPLE WHEN THERE HAS BEEN NO AMENDMENT FOLLOWING CONSTRUCTION. Where the Legislature has twice met and is in session a third time since a decision of the Supreme Court holding that the treatment of physical ailments by chiropractors constitutes the practice of medicine as defined in Comp. Laws 1917, § 4450, and no amendment of the statute has been made, it must be concluded that the law as so construed has the approval of the people, and, unless clearly prohibited by the Constitution or unreasonable or discriminatory, it must be enforced.

6. INJUNCTION—JURY—STATUTE AUTHORIZING INJUNCTION AGAINST UNLICENSED PRACTICE OF MEDICINE NOT INVALID. As Comp. Laws 1917, § 4449, authorizing injunctions against the practice of medicine without a license, is designed to enforce regu-

---

[1] *Board* v. *Freenor*, 47 Utah, 430, 154 Pac. 941, Ann. Cas. 1917E, 1156.

lations looking to the health of the community, it is not invalid as authorizing an injunction against an act made criminal by section 4451, or as denying the right to a jury trial in criminal prosecutions guaranteed by Const. art. 1, § 12.

7. INJUNCTION—IMPRISONMENT FOR VIOLATION IS NOT PUNISHMENT FOR VIOLATION OF STATUTE, BUT FOR VIOLATION OF ORDER OF COURT. One imprisoned for violating an injunction under Comp. Laws 1917, § 4449, restraining the practice of medicine without a license, is not punished for the violation of the statute, but for violation of the order of the court.

8. INJUNCTION—NOT ISSUE TO RESTRAIN UNLICENSED PRACTICE OF MEDICINE IF VIOLATION OR ITS CONTINUANCE IS DOUBTFUL. In issuing injunctions against the practice of medicine without a license under Comp. Laws 1917, § 4449, the courts are controlled by the usual rules that influence or control courts of equity in granting injunctions, and the writ should not issue if there be a doubt or uncertainty as to the violation of the statute or that there will be a continued violation of it if the injunction is not issued.

9. CONSTITUTIONAL LAW—STATUTE AUTHORIZING INJUNCTION AGAINST PRACTICE OF MEDICINE WITHOUT LICENSE NOT VIOLATIVE OF RIGHT TO OBTAIN EMPLOYMENT. As Comp. Laws 1917, § 4449, authorizing the Board of Medical Examiners to institute civil actions to enjoin the practice of medicine without a license is intended to protect the public from treatment by those who have not by experience or study acquired the necessary knowledge, it does not violate Const. art. 12, § 19, providing that every person shall be free to obtain employment, etc.

10. CONSTITUTIONAL LAW—UNREASONABLENESS OF REQUIRING CHIROPRACTORS TO HAVE KNOWLEDGE OF MEDICINE IS FOR LEGISLATURE. The claimed unreasonableness of requiring a knowledge of medicine by a chiropractor who does not use medicine in his system of treatment is a matter to be addressed to the Legislature.

11. CONSTITUTIONAL LAW—DOUBTS AS TO VALIDITY OF STATUTE TO BE RESOLVED IN FAVOR OF STATUTE. It is only where the invalidity or unconstitutionality of a statute is clear and beyond cavil that the courts may declare a law or any part of it invalid, and any reasonable doubt as to the validity of a statute must be resolved in favor of validity.

12. CONSTITUTIONAL LAW—PROPRIETY OF REQUIRING LICENSE TO

PRACTICE MEDICINE ONLY WHEN FEE IS TAKEN IS MATTER FOR LEGISLATURE. The propriety of requiring a license for the practice of medicine for a fee or consideration when any one may without such license treat the sick and afflicted when no fee or consideration is received is a matter for the Legislature.

Appeal from District Court, Second District, Weber County; *A. W. Agee*, Judge.

Action by the Board of Medical Examiners of the state of Utah against A. F. Blair. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*Thomas Morris*, of La Crosse, Wis., and *Chez & Barker*, of Ogden, for appellant.

*Dan B. Shields*, Atty. Gen., and *H. Van Dam, Jr.*, Asst. Atty. Gen., for respondent.

GIDEON, J.

The Board of Medical Examiners of the state of Utah instituted this action to enjoin the defendant from diagnosing, treating, or operating upon any person within the state afflicted with any mental or physical ailment, or afflicted with any abnormal mental or physical condition, and from advising any such person so afflicted as to such mental or physical ailment, or abnormal mental or physical condition, in consideration of receiving, or having received, or thereafter receiving any pecuniary compensation or reward of any kind or nature for such diagnosing, treating, or operating, and from practicing medicine within the state of Utah until he has obtained a license so to do from said board. The Board of Medical Examiners is a corporate body created by law. By Comp. Laws Utah 1917, § 4449, it is authorized to institute civil actions to enjoin any one from

practicing medicine within the state who has not procured from said board such license. That section is the same as Comp. Laws Utah 1907, § 1737, quoted in full in the opinion of this court in *Board* v. *Freenor*, 47 Utah, 430, 154 Pac. 941, Ann. Cas. 1917E, 1156.

The defendant denied that he is or had been practicing medicine in the state, but admitted that he had no license.

Trial was had and judgment entered against defendant, from which he appeals. His contentions on this appeal are: (1) He was entitled to a trial by jury, and it was error on the part of the court below to deny him that right; (2) the evidence does not support the allegations of the complaint; (3) the so-called medical act is unconstitutional and also conflicts with other statutes.

The defendant is a chiropractor. There is little, if any, dispute as to the facts. The testimony taken at the trial, together with the stipulations entered into by counsel, conclusively established that the method of treating physical ailments used by the defendant constitutes practicing medicine under Comp. Laws Utah 1917, § 4450, as construed by this court in the *Freenor Case, supra.* That section is the same as Comp. Laws Utah 1907, § 1738, also copied in full in the *Freenor Case.*

Much of the argument on this appeal was considered and passed on by this court in *Board* v. *Freenor, supra,* adversely to the contentions of the defendant. It is, however, now claimed that this court in that case did not consider or determine the constitutionality of the act under which these proceedings are brought. That contention is based upon the following sentence found in the opinion: "It is not claimed that the statute is unconstitutional." The alleged unconstitutionality of the act is now urged as one of the principal grounds for reversing the judgment in this case. It is argued that the Legislature, by delegating or granting to the Board of Medical Examiners the right to institute a civil action to enjoin any one from practicing medicine without a license, acted in violation of article 6, § 26, subd. 16, of the state

Constitution.   Section 26, aforesaid, so far as material here, reads:

"The Legislature is prohibited from enacting any private or special laws in the following cases:  *  *  *  16. Granting an individual, association or corporation any privilege, immunity or franchise."

The Legislature, in the exercise of the police power of the state, has the authority, for the protection of the health and safety of the citizens, to determine and prescribe the qualifications necessary to practice medicine, surgery, or obstetrics within the state.   We know of no authority denying that right and power of the Legislature. *Board* v. *Freenor, supra.*   That power and authority being admitted, it is within the province of the Legislature to determine and designate what those qualifications shall be, and the courts should not interfere with such regulations once enacted into law unless the same are clearly unreasonable, discriminatory, or deprive a citizen of some right or privilege guaranteed by the Constitution.   The health of the community is of paramount importance and great public concern. The spread of contagious disease and the suppression or removal of the causes of such diseases is a matter of the utmost concern to the state at large.   So long as any regulation is enacted and enforced with the object of protecting the health of the community, such legislation and regulation should not be nullified by the courts unless it clearly appears to violate some fundamental right of the individual.   It is a little late in the history of human progress, considered in connection with the knowledge acquired of physical and mental ailments, the advancement of the science of medicine, the discoveries of the causes and prevention of diseases, to now contend that no particular knowledge or qualification is required for the intelligent treatment of physical and mental ailments. Whether the qualifications as defined and required by our statute are justified by the facts is not a question for the courts to determine.   The Legislature has the undoubted right to make such requirements.   The extent of the same is clearly within the province of that body.   The court

is not concerned, nor should it be, with the good or bad results that may follow the treatment by chiropractors, such as the defendant, or, for that matter, of any particular method of treating physical or mental ailments. The proceedings authorized by the section of the statutes in question are not directed against any particular system of treatment, but they are directed against those who practice medicine within the state without a license. Whether the defendant or any one else treats physical ailments by the methods used by chiropractors is a matter that the courts in no way have any interest or concern. It is simply a question of requiring every one before attempting to treat physical or mental ailments to obtain the necessary license for the constituted authority to so practice.

The right given to the Board of Medical Examiners is not for the benefit or the protection of the members of what is known as the medical fraternity, but rather for the creation of a method of procedure to protect the health of the community. If the public were in no way interested, and the only beneficiaries of the enforcement of the law were the so-called medical fraternity, the courts, we apprehend, would have little difficulty in determining that the special grant or privilege, if it is such, to the Board of Medical Examiners, is within the inhibition of the Constitution.

The opinion in the *Freenor Case* was rendered by this court in January, 1916. It was clearly held in that case that the particular method of treating physical ailments as delineated in the testimony in this case constitutes the practice of medicine as defined by Comp. Laws Utah 1917, § 4450. Two Legislatures have been elected by the people since that decision, have met and adopted laws, and we now have a third Legislature in session. No amendment to or repeal of that statute has been made. No exception in favor of individuals engaged in the particular method of treating diseases with which this defendant is charged had been enacted into the law of the state. We must therefore conclude that the law as enacted and as construed by this court has the approval of the people of the state. Unless,

therefore, the law is clearly prohibited by some provision of the Constitution, or is unreasonable and discriminatory, it is the duty of the courts to enforce it.

Comp. Laws Utah 1917, § 4451, being one of the sections of the chapter creating the Board of Medical Examiners and defining what shall constitute the practice of medicine, makes the practice of medicine, surgery, or obstetrics within the state without a license a misdemeanor and provides a penalty therefor. It is therefore contended that one charged with a violation of that section is entitled to a trial by jury; that authorizing the court to enjoin the practice of medicine as set out in section 4449, *supra,* is an indirect way of enforcing a penal statute, and that therefore the defendant in this case was entitled to a jury trial; that jury trials are guaranteed to defendants in all criminal prosecutions by article 1, § 12, of the state Constitution. It is further insisted that the result or effect of a judgment enjoining the practice of medicine would lead to contempt proceedings if violated and would result, or might result, in the imprisonment of the defendant. It is also urged that courts will not enjoin the threatened commission of a crime, and that such proceedings are unknown to the common law.

It may be conceded that the power to enjoin the threatened commission of ordinary crimes has never been recognized by the courts. But we are here dealing with the right or power of the Legislature to enact and to provide means for the enforcement of regulations looking to the health of the community. If no other or worse results would or could follow the violation of the penal provisions of a statute than the arrest and punishment of any one violating such provisions, it might well be that the Legislature would not have the authority to provide a remedy by injunction. As indicated, the statute was enacted, not to provide a means of punishing those violating its provisions, but to protect the community from what, in the judgment of the Legislature, was or might be detrimental to the public health. The power of the court, while not often called into force, to prevent such an injury, has been repeatedly recognized in the decisions of

the courts of this country. The authority is recognized by the quotation from *Allopathic State Board of Medical Examiners* v. *Fowler*, 50 La. Ann. 1358, 24 South. 809, by this court in the *Freenor Case*, as follows:

> "The General Assembly, having the authority to attach prior conditions to the practice of medicine, was vested with the right to enforce enactments on that subject by prescribing penalties for violations of the same, either by fine, by imprisonment, or by civil remedies."

See, also, *State* v. *Roby*, 142 Ind. 168, 41 N. E. 145, 33 L. R. A. 213, 51 Am. St. Rep. 174; *Carleton* v. *Rugg*, 149 Mass. 550, 22 N. E. 55, 5 L. R. A. 193, 14 Am. St. Rep. 446; *Littleton* v. *Fritz*, 65 Iowa, 488, 22 N. W. 641, 54 Am. Rep. 19; *Ex parte Allison*, 99 Tex. 455, 90 S. W. 870, 2 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 653; *Mugler* v. *Kansas*, 123 U. S. 672, 8 Sup. Ct. 273, 31 L. Ed. 205.

If it be insisted, as it is, that the violation of the injunction may result in the imprisonment of the defendant, the punishment would not be for the violation of a statute, but for violating an order of the court. As concisely stated by the Supreme Court of Indiana in *State* v. *Roby*, *supra*, at page 189 of 142 Ind., at page 152 of 41 N. E. (33 L. R. A. 213, 51 Am. St. Rep. 174) :

> "It is further contended that, in case of the violation of an injunction under the civil remedy part of the act, the court might fine the defendant for contempt, for disobeying the order of injunction, and that would make him liable to double punishment. The statement of the proposition furnishes a sufficient answer thereto. In that case he would not be punished for crime, but for contempt of court."

Courts will of necessity be controlled, in issuing injunctions, by the usual rules that influence or control courts of equity in the exercise of that remedy. If there be a doubt or uncertainty as to the violation of the statute or that there will be a continued violation of it if the injunction is not issued, the writ should not issue. In this case the defendant made no attempt to deny or contradict the fact that he had been engaged, and intended to continue, in diagnosing and treating physical and mental ailments with-

out procuring a license so to do as required by statute.

The further contention made by appellant that giving the right to the Board of Medical Examiners to bring actions such as this is in violation of article 12, § 19, of the state Constitution is fully answered by the statement that the primary and fundamental reason, and the only reason or justification, for the enactment of such legislation as this in question is to protect the public from any one treating physical ailments who has not by experience or by study acquired the necessary knowledge to enable him to understand the needs of the human system and to intelligently, at least presumably so, prescribe for such ailments. In short, to protect the health of the community.

It is argued by appellant that the law requiring chiropractors to pass an examination in or have some knowledge of materia medica is so unreasonable as to render that requirement invalid; that, as the chiropractor does not use medicine, it is wholly useless for him to have a knowledge of medicine; that to require a knowledge of medicine by a chiropractor is as unnecessary as it would be to require that the medical doctor have a thorough knowledge of geology or mineralogy. Even though the argument had merit, still it is one to be addressed to the Legislature. Should it be conceded that the contention renders doubtful the validity of the requirement that chiropractors have a knowledge of materia medica and some other subjects referred to in the statute, it would not render the law invalid, because when there is any reasonable doubt as to the validity of a statute the doubt must be resolved in favor of validity. It is only where the invalidity or unconstitutionality is clear and beyond cavil that the courts have the right to declare a law, or any part of the same, invalid.

It is also claimed that one of the essential elements of the offense of practicing medicine without a license is that the practicing be done for a fee or consideration. If done without a fee or without consideration, any one, chiropractor or whatnot, may treat the sick and afflicted in this state in any manner he may desire, and regardless of results. It

is therefore argued that the law is for the protection    12
of the regular physicians and osteopaths, and that it
is wholly mercenary in its purpose, and not for the protection
of the public.  Again the objection is one to be urged upon
the Legislature, and not the courts.

The court's findings are amply supported by the testimony.
As indicated, there is no substantial conflict in the testimony.
The defendant was engaged in treating people for physical
ailments for a consideration.  The defendant did not have
a permit or license from the constituted authority to so diag-
nose and treat physical ailments or mental diseases.  If the
method of treatment as practiced by the defendant and others
of his school has the merits contended for by its advocates,
concerning which this court expresses no opinion, the Legis-
lature is the right body to appeal to for relief, and not the
courts.  It is the duty of the courts to enforce the law en-
acted by the Legislature so long as such law does not conflict
with some constitutional guaranty.

Appeals were taken by three other defendants, namely,
Clarence B. Johnson, I. J. McKell, and Ross H. McCune.  It
is stipulated that the judgment entered in this case shall be
applicable to the other defendants named herein, and such
will be the order.

The judgment of the district court is affirmed, with costs.

CORFMAN, C. J., and WEBER, THURMAN, and
FRICK, JJ., concur.