## ITCAINA *v.* MARBLE

No. 3064

March 5, 1936.                    55 P. (2d) 625.

*McNamara & Robbins,* for Appellant:

*Milton B. Badt,* for Respondent:

## OPINION

By the Court, DUCKER, C. J.:

This appeal is from an order of the Fourth judicial district court, granting an injunction pendente lite, issued after hearing of an order to show cause. The parties will be referred to as plaintiff and defendant.

Plaintiff, a cattle raiser, brought this suit to restrain

defendant from watering his sheep at springs and water-courses situated in territory in Elko County, commonly known and called Hanks creek basin, and from grazing his sheep on the public range of that area.

The complaint is predicated upon three causes of action: First. That for more than forty years, plaintiff and his predecessors in interest have been the owners of the right to use all of the waters of Hanks creek basin and its tributaries and of certain described springs for stock-watering purposes within the limit of said Hanks creek basin, and that the watering of sheep by the defendant in said basin was violative of the 1925 stock-watering law. Second. That plaintiff and his predecessors in interest have acquired the right to the exclusive use of all of the public lands within said Hanks creek basin under the 1931 stock-grazing act for grazing cattle; that such right was acquired by virtue of such use for a period of more than forty years last past; and that the grazing of sheep by defendant within the limits of Hanks creek basin was violative of said stock-grazing act. Third. That such watering and grazing of sheep by defendant was violative of the terms of an oral agreement between plaintiff and defendant for a division of the public range, entered into March 1, 1927, whereby defendant agreed to confine the grazing of his sheep to areas outside of Hanks creek basin, which agreement was a part of the consideration of a written agreement later executed between them in which plaintiff agreed to sell, and defendant agreed to buy, a large area of land, together with certain forest reserve rights and permits, for the sum of $122,700, payable in installments, and on which the sum of $70,000 had been paid.

Defendant claimed an established use of said waters for watering sheep. He also claimed an established use for grazing his sheep in Hanks creek basin by force of the 1931 stock-grazing act. He denied any agreement as to a division of the range.

At the conclusion of the hearing, which extended through a number of days, during which considerable testimony was given and evidence adduced on the part

of both parties, the court rendered an oral opinion which was reduced to writing, and is included among the papers constituting the record on appeal. No formal findings were made. The court decided that plaintiff was entitled to an injunction on all three causes of action alleged in the complaint. But the relief sought by plaintiff was granted only in part by confining it to the major portion of the public lands in said Hanks creek basin. A right of way was reserved to defendant by the injunction to permit him to drive his sheep across the southern part of the public range affected by it to and from lands owned by him.

The errors relied upon for a reversal of the order granting the injunction pendente lite, are as follows: First. That said order is contrary to, and not supported by, the evidence. Second. That the trial court was without jurisdiction of the first cause of action alleged, because the act of the legislature, being chapter 201, Statutes of 1925, under which it was laid, does not authorize the issuance of the injunction. Third. That the trial court was without jurisdiction as to the second cause of action alleged, or to grant any injunction thereunder, because chapter 226, Statutes of 1931, under which it was brought, does not invest any customary user of unappropriated public domain with title thereto or estate therein sufficient upon which to base an injunction. Fourth. That the court erred in permitting any testimony to be introduced as to the oral agreement alleged in the third cause of action, and was without jurisdiction to issue an injunction for the claimed breach of the oral contract.

Section 2 of the former act reads: "Whenever one or more persons shall have a subsisting right to water range live stock at a particular place, and in sufficient numbers to utilize substantially all that portion of the public range readily available to livestock watering at that place, no appropriation of water from either the same or a different source shall subsequently be made by another for the purpose of watering range live stock in such numbers and in such proximity to the

watering place first mentioned, as to enable the proposed appropriator to deprive the owner or owners of the existing water right of the grazing use of said portion of the public range, or to substantially interfere with or impair the value of such grazing use and of such water right."

Section 4 of the act makes a violation of the above provision a misdemeanor. The act does not provide for granting an injunction.

Section 1 of said act of 1931, insofar as it is applicable to the facts of this case, reads: "It shall be unlawful to graze live stock on any part of the unreserved and unappropriated public lands of the United States in the State of Nevada, when such grazing will or does prevent, restrict or interfere with the customary use of such land for grazing live stock by any person who, by himself or his grantors or predecessors, shall have become established, either exclusively or in common with others, in the grazing use of such lands by operation of law or under and in accordance with the customs of the graziers of the region involved; provided, that this act shall not prohibit the grazing on any part of such public lands of live stock owned, kept or used for work or milking purposes by any ranch owner or bona fide settler, for his domestic use, as distinguished from commercial use, nor prohibit the grazing of any live stock necessary for and used in connection with any mining or construction work or other lawful work of similar character. Customary or established use as graziers, otherwise than under the operation of law, as herein used, shall be deemed to include the continuous, open, notorious, peaceable and public use of such range seasonably for a period of five years or longer immediately prior to the approval of this act by the person or his grantors and/or predecessors in interest except in cases where initiated without protest or conflict to prior use or occupancy thereof. It is further provided that any change in such customary use so established shall not be made hereafter so as to prevent, restrict

or interfere with the customary or established use of any other person or persons."

Section 3 makes a violation of the act a misdemeanor punishable by fine or imprisonment in the county jail, or both, and provides for the recovery of damages.

Section 4 prescribes: "The violation of any provision of this act may be restrained by injunction, issued by a court of competent jurisdiction, pursuant to the provisions of law and principles of equity relating to injunctions."

The act is an exertion of the police power of the state for the purposes declared in its preamble, of preventing controversies often leading to breaches of the peace, and of securing the peaceful and most economical use of the public lands of the state, by protecting the grazing uses established by customs based on the experience of graziers.

We think the injunction is amply supported by the evidence. It is quite voluminous, and, while we have carefully reviewed all of it, we deem it unnecessary to more than outline it.

■ Plaintiff acquired considerable land adjacent to Hanks creek basin by purchase from the receiver of the Union Land & Cattle Company in the latter part of the year 1925, and there engaged in the business of cattle raising. Substantially the same lands have been owned in turn by plaintiff's predecessors in interest extending back to the firm of Mason & Bradley, whose ownership dates to about 1882. These owners were engaged extensively in the cattle-raising business, and all of them throughout their ownership used said Hanks creek basin and other adjacent public lands for summer and fall range for the grazing of large numbers of their cattle. This use was contemporaneous with the use of the waters of Hanks creek basin for the watering of such stock. The evidence shows, without conflict, that such use of the basin was practically exclusive until the defendant commenced bringing his sheep into the basin in 1909. Plaintiff's immediate predecessors in

interest owned sheep as well as cattle. But the evidence discloses that the sheep were generally handled on ranges outside of Hanks creek basin, reserving the basin exclusively for their cattle, except in 1913, when sheep were sheared in the basin. Plaintiff, like his predecessors in interest, used the basin for the ranging of his cattle. He began such use in 1926, when he put 1,000 head of cattle on the range and leased the privilege to H. Moffat & Co. to range cattle in the basin.

That company put out on the range, including Hanks creek basin, in that year, about 5,700 head of cattle. Plaintiff used Hanks creek basin seasonally thereafter for grazing purposes either with his own cattle or by leasing the privilege to other stockmen and sometimes in both ways. In 1929 he allowed H. Moffat & Co. to run 2,500 head of cattle on his range, and he put out 1,500 head. In 1930, in addition to the cattle of other stockmen grazing in Hanks creek basin under lease from him, he had 2,000 head grazing there. He made the same use of the basin in 1931. In 1932 plaintiff had 2,500 head of cattle on his range, and the number of cattle of other stockmen grazing there under lease from him had been reduced to less than 1,000 head. Plaintiff gradually increased the number of cattle grazing on the range as the cattle of other owners accustomed to graze over it were withdrawn.

The evidence brings plaintiff within the protection intended to be afforded by the statute of 1925; that is to say, it shows that he has a subsisting right to water range livestock at the watering places in Hanks creek basin in sufficient numbers to utilize substantially all that portion of the public range readily available to livestock watering at such places, and that such portion of the public range included all of the disputed area.

■■ It is contended that the most proved was, the parties have a right in common as to the watering right and grazing use in that region. This is based upon the evidence which shows that the defendant commenced watering and grazing his sheep in that region in 1909,

which has continued since that date, and upon expressions in the court's oral opinion to the effect that a right and use in common had been thus established as to the water and range. The trial court said, in its oral opinion: "This court is satisfied, from the evidence, that Hanks Creek Basin was used exclusively for cattle from 1882 to 1909, by the plaintiff's predecessors in interest, and a stock watering right for cattle was established in Hanks Creek Basin over that period of years. And then the defendant began to use the Basin for his sheep, beginning the use there in about the year 1909; that plaintiff's predecessors in interest then changed to a certain extent the use of the range and the water from cattle to sheep, for a period of time; and, as I interpret the evidence, this was presumably to hold the range as against the defendant, since the Court is satisfied that cattle and sheep cannot range together upon a given range to any benefit, and evidently this condition has continued to a greater or less degree as the years went by down to the present time. But the defendant has persisted in the use of the range in that Basin for sheep, while plaintiff's predecessors used it for cattle and attempted to maintain it as a cattle range by protest and by grazing sheep to keep the defendant's sheep off. This, in the Court's opinion, changed somewhat the nature of the use of the water and the range and created a use in common, so far as the sheep of defendant and plaintiff's predecessors in interest were concerned, but did not change the use with respect to the grazing of cattle. As the Court has indicated before, the Court considers that cattle cannot be really a common user upon the same range between cattle and sheep. The evidence disclosed that cattle were turned upon a range from the lands south and east of Hanks Creek Basin, and allowed to graze the Hanks Creek Basin. They were even pushed north in what is known as Stud Basin, and ranged year after year from the year 1882, and, of course, with the exception of the change that the Court has referred to, that condition has continued over this period of years. And

since 1909 defendant has also grazed his sheep in Hanks Creek Basin, and, as the Court indicated, somewhat under protest by words and also by the Union Land & Cattle Company having sheep in there in order to compete with him. The Court is convinced that the defendant continuously used a portion of this range after he become established there."

Also, in the course of its opinion, the court said: "I believe, as a court of equity, I have the right to establish that boundary in accordance with the equities of the case, as they are presented under the evidence before the Court. In order to do this the Court considers it must take into consideration that the plaintiff and his predecessors established a right to graze sheep in the year 1909; and since cattle and sheep cannot be economically grazed on the same range there should be a division of the range in question based upon the priorities of the respective parties; that is, that the priorities should determine the amount of range to be allowed to each."

Proceeding on the theory indicated in the opinion, the trial court, as previously noted, divided the public range in Hanks creek basin by confining the injunction to only a major part thereof. The court having found as defendant contends, that a right in the waters and grazing use of the range in common had been established since 1909, its action in using the priorities of the parties as a yardstick to measure the same is attacked as arbitrary and unlawful.

We think the court fell into error in concluding that such a right and use in common had been established. The establishment of a grazing use in the range in question by the defendant was never acquired under the provisions of the statute of 1931, under which he claims. One of the elements prescribed by the statute to constitute customary or established use as a grazier is that the use must be peaceable for the period required. As we have seen, the trial court itself stated that plaintiff's predecessors in interest protested defendant's use of the range by words and by having sheep in there to

compete with him. The evidence shows that, during the years after defendant commenced bringing his sheep into the basin, plaintiff's predecessors in interest, and plaintiff, by their employees frequently ordering defendant's herders from the disputed territory and by words to defendant himself, consistently protested defendant's intrusion on the range. It is not necessary to show that breaches of the peace had been committed towards defendant or his herders to establish that his use of the basin with his sheep was not peaceable. There is another element that is essential to the establishing of a grazing use under the statute, which is absent in defendant's case. Mr. Wright, plaintiff's manager, testified that in 1927 he leased the grazing privilege in Hanks creek basin to defendant for that year for the sum of $1,000, and his sheep were grazed there during that year under that lease. One thousand dollars was deposited in the Elko bank by defendant to plaintiff's credit on June 27, 1927. On the deposit slip it was noted that the sum was for "Hanks Creek Basin Feed." The defendant's testimony in explanation of this does not conform to our idea of substantial evidence. His grazing use of Hanks creek basin during the season of that year was in subordination of plaintiff's use. This being so, there was no continuous grazing use of Hanks creek basin by the defendant, as required by the statute of 1931.

However, independently of the act of 1931, we think plaintiff's right to the use of the waters of Hanks creek basin for the purpose of watering stock, and the grazing use of the public range thereon, were established under the act of 1925.

The court said, as previously stated: "This court is satisfied, from the evidence, that Hanks Creek Basin was used exclusively for cattle from 1882 to 1909 by plaintiff's predecessors in interest, and a stock watering right for cattle was established in Hanks Creek Basin over that period of years." This is supported by the evidence. This right was acquired by plaintiff. By virtue of the act of 1925, plaintiff's use thereunder

became exclusive. As to defendant having acquired any right in the waters of Hanks creek basin in common or otherwise, under the 1925 act or otherwise, it is clear that he did not nor could not. He did not attempt to appropriate any of such waters prior to 1909. Consequently he could not .have initiated any right to the use of such waters without due application to the state engineer. This, it is conceded, was not done.

The 1925 act has been held by this court to be a valid exercise of the police powers of the state. In re Calvo, 50 Nev. 125, 253 P. 671. Under its provisions, by reason of plaintiff's subsisting right to the use of all the waters in Hanks creek basin, he could not be deprived of the grazing use of any portion of the public range readily available to the plaintiff's cattle. It is not contended that such areas do not include the entire disputed territory. Consequently, the watering and grazing of defendant's sheep within these areas would deprive plaintiff of the grazing use thereof, for, as the court said and the evidence disclosed, cattle will not stay on the range grazed by sheep. As defendant established ·no watering rights or grazing use in the disputed territory, it is difficult to see how he was prejudiced by the court's declining to enjoin him from a part thereof. There is no merit in defendant's contention that a right to the use of waters in the disputed territory was conveyed to him by the written agreement for the conveyance of lands, alleged in the complaint. Those lands are not in that area.

■ Defendant contends that the court was not authorized to ·issue the injunction under the 1931 grazing act, because such act does not invest plaintiff with title to or estate in the public domain. Ordinarily courts of equity have no jurisdiction at the suit of another to restrain a person from grazing his livestock on such lands. No property right can be acquired by such use. All persons so using the public domain do it merely by sufferance of the federal government or, as it is sometimes designated by the courts, by virtue of an implied license.

This use is often alluded to as a right. It is not a right that the government of the United States has conferred, and these public range lands may at any time be withdrawn from such use or the use permitted only under government regulations, as in the case of forest reserves. Buford v. Houtz, 133 U. S. 320, 10 S. Ct. 305, 33 L. Ed. 618; Omaechevarria v. Idaho, 246 U. S. 343, 38 S. Ct. 323, 62 L. Ed. 763; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; In re Calvo, 50 Nev. 125, 253 P. 671.

■ However, in the absence of government regulations, the state may regulate the use of the unreserved and unappropriated public domain within its borders. In re Calvo, 50 Nev. 125, 253 P. 671, and federal and state cases cited therein; McKelvey v. U. S., 260 U. S. 353, 43 S. Ct. 132, 67 L. Ed. 301; Bown v. Walling, 204 U. S. 320, 27 S. Ct. 292, 51 L. Ed. 503; Allen v. Bailey, 91 Colo. 260, 14 P. (2d) 1087, 1091. The court, in the last-cited case quoted approvingly from 50 C. J., p. 888, as follows: "As owner of the public lands the United States has the same right and dominion over them that any other owner would have, and may protect the same from depredation. Congress is vested by the constitution with the power to control and to make all needful rules and regulations with respect to the public domain, and the exercise of such power cannot be restricted by state legislation. But the states may also prescribe reasonable police regulations applicable to public land areas, insofar as such regulations do not conflict with congressional enactment or if congress has not acted."

■ In the exercise of this conceded power, the state may adopt such legislative means as are adapted to the end it seeks to accomplish, so long as they are within the scope of the constitution and not prohibited by it and are not arbitrary or unreasonable. Omaechevarria v. Idaho, supra; McKelvey v. United States, supra.

■■ By the 1931 grazing act, the legislature has determined that its purpose can be best accomplished

by securing in their use those graziers who have established themselves as such, by the continuous, open, notorious, peaceable and public use of said lands seasonally for a period of five years or longer immediately prior to the approval of the act. It has likewise determined that the remedy of injunction is one of the means best adapted to enforce the purposes of the act.

We are of the opinion that it had power to confer upon courts of equity jurisdiction of a case arising under the statute notwithstanding no property right could be invaded by one violating the provisions of the act. It is well settled that the state, in the exercise of its police powers, may authorize courts of equity in proper cases to prohibit by injunction the violation of the provisions of an act of the legislature, though no property right is involved. Board of Medical Examiners of State of Utah v. Freenor, 47 Utah, 430, 154 P. 941, Ann. Cas. 1917E, 1156; Board of Medical Examiners v. Blair, 57 Utah, 516, 196 P. 221; Ex Parte Allison, 48 Tex. Cr. R. 634, 90 S. W. 492, 13 Ann. Cas. 684; McMillan v. Livestock Board, 119 Miss. 500, 81 So. 169; Rochester v. Gutberlett, 211 N. Y. 309, 105 N. E. 548, L. R. A. 1915D, 209, Ann. Cas. 1915C, 483; Clopton v. State (Tex. Civ. App.), 105 S. W. 994; Campbell v. Peacock (Tex. Civ. App.), 176 S. W. 774.

In the case of Board of Medical Examiners v. Blair, supra, the law of Idaho under consideration was one granting to the board of medical examiners the right to institute a civil action to enjoin anyone from practicing medicine without a license. The act also defined what shall constitute the practice of medicine and made such practicing without a license a misdemeanor and provided a penalty therefor. It was held that the state, in the exercise of its police power, could confer upon courts of equity authority to enjoin the violation of the act.

To the same effect is Board of Medical Examiners v. Freenor, 47 Utah, 430, 154 P. 941, 942, Ann. Cas. 1917E, 1156, in which a great deal of authority is cited supporting the rule. The court said: "Unless prevented

by some constitutional provision, which is not claimed, we think the Legislature had the power to change, abolish, or enact rules of equity, and hence are we of the opinion that the court, by reason of the statute, had jurisdiction to proceed as it did."

The court in that case quoted from the case of Allopathic State Board of Medical Examiners v. Fowler, 50 La. Ann. 1358, 24 So. 809, as follows: "The General Assembly, having the authority to attach prior conditions to the practice of medicine, was vested with the right to enforce enactments on that subject by prescribing penalties for violations of the same, either by fine, by imprisonment, or by civil remedies. The right to practice medicine being conditioned by law upon the prior obtaining of a certificate from a medical board, * * * plaintiffs were clearly authorized (under an act), when they had reason to believe that defendant was violating the law in this respect, to test the facts of the case through injunction."

█ If the object to be accomplished is conducive to the public interest, the legislature may exercise a large liberty of choice in the means employed to enforce an exertion of its police powers. Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385.

The case of Allen v. Bailey, supra, is decisive of the point in question. A law of Colorado, known as the public domain range act, regulating the grazing of a certain extensive range as to cattle and sheep, provided for injunctive relief. A violation of the act was made a misdemeanor punishable by fine or imprisonment or both. The constitutionality of the act was upheld in the above case and the injunctive feature sustained. Speaking on the last point, the court said, in part: "Defendants chafe under the injunction and restraining order features of the act, but without reason. In this respect, it is an advancement over the Idaho statute, which does not contain such a provision, but injunctions are granted in instances too numerous to mention. * * * Language used in a liquor case, decided in Eilenbecker v. District Court Plymouth County, 134

U. S. 31, 40, 10 S. Ct. 424, 427, 33 L. Ed. 801, is apropos. The court said: 'Certainly it seems to us to be quite as wise to use the processes of the law and the powers of the court to prevent the evil as to punish the offense as a crime after it has been committed.' See, also, Mugler v. Kansas, 123 U. S. 623, 673, 8 S. Ct. 273, 31 L. Ed. 205. The Colorado act in question may be said to give recognition to the adage that 'an ounce of prevention is worth a pound of cure,' and to withhold injunction in a proper case would deprive courts of one of their most powerful resources. 'The power to punish for contempts is inherent in all courts.' Eilenbecker v. District Court, supra, at page 37 of 134 U. S., 10 S. Ct. 424, 426, 33 L. Ed. 801, and we refer once more to the above quotation from McKelvey v. United States, wherein it is said that regulations to which the state power extends are 'measures to *prevent* breaches of the peace,' etc. (The italics are ours.) We do not find any feature of the 1929 act involved in this proceeding that merits our disapprobation."

As the injunction was authorized under the 1931 act, it is unnecessary to determine whether it was also authorized under the 1925 act. For the same reason it is unnecessary to determine whether the court erred in permitting testimony to be introduced as to the alleged oral agreement or whether it had jurisdiction to issue an injunction for the claimed breach thereof. We considered all other contentions made by defendant and found them to be without merit.

The order directing the issuance of the temporary injunction is affirmed.

COLEMAN, J., concurring:

I concur in the opinion of the chief justice and in the order, but wish to give expression to one or two ideas not expressed by him.

Aside from the legal points made by counsel for defendant, he bears down with vigor upon the proposition that the judgment of the lower court is inconsistent, in that it concluded that equity demanded that

each party was entitled to a portion of the range in question, and hence the order appealed from should be reversed.

In considering the contentions made by the defendant on this appeal we must keep in mind the fact that, pursuant to statute (Stats. 1935, p. 202, sec. 28), this court may reverse, affirm, or modify the judgment appealed from; furthermore, that cases are appealed for the correction of errors (Water Co. of Tonopah v. Tonopah Belmont Dev. Co., 50 Nev. 24, 249 P. 565), and that, if a judgment is right, though a wrong reason is given for it, there should be no reversal (Richards v. Vermilyea, on rehearing, 42 Nev. 299, 300, 180 P. 121).

With the foregoing rules in mind, let us briefly review the facts. Plaintiff and his predecessors admittedly had enjoyed the right to range cattle in Hanks creek basin from 1882 to 1909 as a cattle range. In the last-mentioned year the defendant first began to graze his sheep therein. Prior to 1905, water was appropriated for irrigation and livestock purposes by simply putting it to a beneficial use. In 1905 the legislature (Stats. 1905, p. 67) enacted that one desiring to appropriate public waters should file with the state engineer his written application and follow that up as in said act provided. Such has been the law down to the present time. It is not even suggested that the defendant ever appropriated or acquired a water right in Hanks creek basin. We have a right to take judicial notice of matters of public knowledge, such as the climatic and range conditions in this state, and that livestock cannot exist upon the public range unless there is water available for them to drink.

So far as appears from the record in this case, plaintiff owns all the water in Hanks creek basin; defendant owning none. It is clear that defendant's sheep had to quench their thirst with water owned by plaintiff. While the public domain is free to all, such right is subject to such restrictions as the state may impose as a matter of police regulation. In re Calvo, 50 Nev. 125, 253 P. 671. In 1925, as pointed out by the chief justice, the

legislature enacted a law regulating the use of the public domain with reference to the appropriated waters thereon. So far as appears from the record, having in mind the 1925 act, the defendant did not and could not under the facts, show himself to be entitled to range his sheep in Hanks creek basin. This situation continued until the bringing of this suit. Such being the fact, the defendant could not acquire, except in a peaceable manner, a right to graze his sheep in Hanks creek basin, between 1925 and the bringing of this suit. That he did not acquire such peaceable right is clear. Plaintiff constantly protested the presence of defendant's sheep in the basin, except in 1927, when an agreement was entered into between the parties. Certainly it was not incumbent upon plaintiff to commit some overt act constituting a breach of the peace to establish the fact that defendant's grazing in the basin was not peaceable.

There were no formal findings of facts in this case, and we must look to the oral opinion of the lower court to ascertain what facts he found to have been established by the evidence. The chief justice has quoted from it at length, and I shall refer to only portions thereof. The court said: This, in the Court's opinion, changed somewhat the nature of the use of the water and the range and created a use in common, so far as the sheep of defendant and plaintiff's predecessors in interest were concerned, but did not change the use with respect to the grazing of cattle."

We must interpret this language. What did the court mean by the language used? He held there was a use in common as to sheep, but not as to cattle.

Prior to making the statements quoted, the court had recognized that the plaintiff and his predecessors had used the range exclusively as a cattle range, except for a period "to hold the range against defendant, since the court is satisfied that cattle and sheep cannot range together."

It is true that the court said at another place that the defendant continuously used a "portion" of this range after he became "established" thereon. The word

"portion" is too indefinite to deserve consideration. The same may be said of "established" in the connection in which it is used.

Under the evidence, the facts found by the trial court, and the law, the temporary injunction was properly ordered.

TABER, J., concurring:

I concur in the order of affirmance, and will very likely file a concurring opinion. If I decide upon that course, the opinion will be filed not later than the 16th instant.

CONCURRING OPINION

March 16, 1936.

TABER, J.:

On this appeal we are not permitted to base a decision upon our own independent ideas of what would be most just and equitable in view of the facts and circumstances disclosed by the record. We are confronted with and bound by certain statutory enactments, particularly the water law of March 22, 1913, as amended, sections 7890–7978 N. C. L., the livestock watering law of April 1, 1925, Laws 1925, c. 201, sections 7979–7985 N. C. L., and the public lands grazing act of March 30, 1931, Laws 1931, c. 226, sections 5581 to 5581.06 N. C. L. This court has heretofore decided that the first two of the above-mentioned acts are constitutional. The constitutionality of the grazing act of 1931 as a whole is not attacked on this appeal, though appellant does contend that the legislature was without power to authorize any court to issue an injunction as provided in section 4 of said act (section 5581.03 N. C. L.). We are clearly of the opinion that this contention is not sound.

I agree with appellant that the trial court was not authorized to divide the range or create a right of way. As I view the 1931 act, one either has or has not an established customary use for grazing livestock on public lands, exclusively or in common. If at the time this suit was instituted defendant had established a customary use in common for the grazing of his sheep on the

public lands described in the complaint, the trial court could not deprive him of or make any change or modification in such customary use, either as to the areas involved or the extent and character of his use. In other words, if defendant had established such a use, he was entitled to be fully protected therein, both as respects its nature and extent. I do not say whether it would have been wiser for the legislature to provide, as in Colorado, that the courts may divide the range, or, as in Idaho, that "the priority of possessory right between cattle and sheep owners to any range, is determined by the priority in the usual and customary use of such range, either as a cattle or sheep range" (Code Idaho 1932, sec. 24–1607) ; but, as our legislature has not seen fit to include such provisions in any of our statutes, it is my opinion that trial courts cannot, under the provisions of the 1931 grazing act, divide the range or provide rights of way on any theory of economic use, priority in use, or on any general theory of public welfare.

If, however, at the time this action was commenced, defendant had not, within the meaning of the act of 1931, established himself as a customary user, the action of the trial court in dividing the range and providing a right of way, though erroneous, was not prejudicial to defendant, and therefore not ground for reversal.

Whether defendant was an established customary user depends, among other things, upon whether his use was peaceable. I have found the following authorities to be of some assistance in construing the meaning of the word "peaceable," as used in the first section of the 1931 grazing act: Hazas v. State, 25 Ariz. 453, 219 P. 229, at page 231; Lawson on Usages and Customs, sec. 31; Clarke's Browne on Usages and Customs, sec. 20; 27 R. C. L. sec. 3; 17 C. J. sec. 32. And see Union Mill & Min. Co. v. Dangberg, 2 Sawy. 450, 24 Fed. Cas., p. 590, No. 14370. As the textbooks above cited are not in many private or county law libraries, I quote the following sentences from Lawson, loc. cit.: "A custom must have been peaceable, and acquiesced in, and not disputed

at law or otherwise; for customs owe their origin to common consent, and this cannot be intended in disputed cases. If it has been the subject of contention and dispute it has not recommended itself as expedient to all, and the fact that it has proved a convenience to some, is counteracted by the fact that it has also proved an inconvenience to many. But the non-consent of these is as powerful as the consent of those; and as customs, to be valid, owe their efficacy to common consent, the fact that they have been immemorially disputed proves that universal consent was wanting. * * * " Section 20 of Clarke's Browne, above cited, reads the same as the second and third sentences just quoted from Lawson, and for that reason need not be set forth here. Some of the testimony of plaintiff's witnesses, James Russell, William Murdock, William H. Woody, and William B. Wright, and defendant's witnesses, R. W. Anderson, Pete Chevalier, and Pete Olabarria, convinces this court that the trial court was clearly wrong in impliedly finding that defendant's use of the range in question was "peaceable" within the meaning of that word as used in section 1 of the 1931 grazing act (section 5581 N. C. L.).

The bearing of the general water law of 1913 upon the question of the respective water rights of the parties, and the operation of the livestock watering law of 1925 as protecting plaintiff in his range and water rights in the Hanks creek basin, are discussed in the opinions of my associates.