Cliff GARDNER and Bertha Gardner, Plaintiffs,

v.

D. Waive STAGER, et al., Defendants.

No. CV–N–94–846–ECR.

United States District Court, D. Nevada, Reno.

June 30, 1995.

Glade L. Hall, Reno, NV, for plaintiffs.

Greg Addington, Asst. U.S. Atty., Reno, NV, for federal defendants D. Waive Stager and Rodney Harris.

J. Michael Memeo, Office of the Dist. Atty., Elko, NV, for defendants Smith and Llee Chapman.

## MINUTES OF THE COURT

EDWARD C. REED, Jr., District Judge.

*MINUTE ORDER IN CHAMBERS*

The Gardners filed this suit in the state court in Elko, seeking to "quiet title," under NRS 40.090(2), to "grazing rights" and "water rights" in the Humboldt National Forest. They did not name the United States or any of its agencies as defendants, instead naming certain local and state officials and federal officials. The land at issue lies within a national forest which was created in 1911. The essence of the Gardners' complaint is that the federal government, since 1989, has acted unreasonably in its management of the land. Therefore, they seek to get around federal control of the land by arguing that they and their predecessors have, since at least 1872, occupied and used the land for ranching purposes, that their predecessors thus acquired common law rights to use the land for grazing purposes and to some amount of water as a matter of prior appropriation, Doc. # 8 at 7–8, and that these rights, having been acquired before the creation of the national forest, are not subject to federal regulation. The argument is completely unpersuasive.

### 1. *The proper defendants*

Two defendants—Smith, the former Elko County District Attorney, and Chapman, an Elko County Commissioner—have moved to dismiss the complaint, on the ground that they do not claim any sort of interest or right in the land and water that is the subject of the complaint. Doc. # 6 Exh. A. The Gardners accede to the motion, Doc. # 11 at 6, and the complaint will be dismissed as to Smith and Chapman.

■ The United States, which is not a named party, removed this action to federal court and filed a motion to dismiss. Doc. # 12. At least two federal officials are nominal defendants, but "suits in which governmental property rights are challenged in reality are against the United States and are barred by sovereign immunity" unless there is a statutory waiver of that immunity. 14 Charles A. Wright, et al., *Federal Practice & Procedure* § 3655, at 222 (2d ed. 1985); *see also Manwell v. Public Housing Admin.,* 165 F.Supp. 439 (N.D.Cal.1958) (no claim stated against Public Housing Administration where plaintiff's quiet title suit would divest the government of an interest in real property).

■ The land in question here lies within a national forest. A suit by the Gardners to "quiet title" to grazing and water rights in a national forest is a suit against the United States directly, and the United States is the proper defendant. The Gardners cannot get around this fact by naming federal officials as individual defendants. Indeed, the United States, as noted above, has entered an appearance, recognizing that its own interests in land and water are at stake. We will therefore dismiss the individual federal de-

fendants. Similarly, because the other individual defendants (apparently state officials) can have no right or claim in federal land or water, we will dismiss the suit as to them, too. We deem the United States to be sole defendant in this action, and proceed on that basis.

### 2. *Grazing rights*

This is not the first time that ranchers in Elko, unhappy with federal land management policies, have sued the government. *See Brooks v. Dewar*, 313 U.S. 354, 61 S.Ct. 979, 85 L.Ed. 1399 (1941). The Gardners' claim to grazing rights suffers from two defects.

■ First, the Gardners sued under a Nevada statute, as to which the United States has sovereign immunity. Supreme Court and Ninth Circuit precedent establish, in the clearest terms possible, that the federal Quiet Title Act, 28 U.S.C. § 2409a, provides the *only* means by which an adverse claimant can challenge the United States' title to real property. *Block v. North Dakota ex rel. Board of Univ. & Sch. Lands*, 461 U.S. 273, 285, 103 S.Ct. 1811, 1818–19, 75 L.Ed.2d 840 (1983); *South Delta Water Agency v. Department of the Interior*, 767 F.2d 531, 541 (9th Cir.1985).

Second, even if they had sued under § 2409a, and thus avoided the sovereign immunity bar, the Gardners would lose on the merits, for their claim flies in the face of a century of Supreme Court precedent. Generally,

> [i]n the pioneer or "emigrant" days of western America immense areas of unappropriated and otherwise unused territory were freely used by stockmen for grazing. The government not only refrained from objecting to this practice but in various ways encouraged it and in time this privilege ... became "an implied license, growing out of the custom of nearly a hundred years." This license was held to be the basis of various rights as between the licensee and other private individuals *but not as between the licensee and the government*.... "And so, without passing a statute, or taking any affirmative action on the subject, the United States suffered its public domain to be used for such purposes. There thus grew up a sort of implied license that these lands, thus left open,

> might be used so long as the government did not cancel its tacit consent.... *Its failure to object, however, did not confer any vested right on the complainant, nor did it deprive the United States of the power of recalling any implied license under which the land had been used for private purposes.*"

*Osborne v. United States*, 145 F.2d 892, 894 (9th Cir.1944) (citations omitted) (emphasis added) (*citing Buford v. Houtz*, 133 U.S. 320, 10 S.Ct. 305, 33 L.Ed. 618 (1890); *Light v. United States*, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570 (1911); *Omaechevarria v. Idaho*, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763 (1918)).

The Nevada Supreme Court, too, has referred to grazing on public lands as something done under an "implied license" or at the "sufferance" of the federal government, noting that it

> is not a right that the government of the United States has conferred, and these public ranges may at any time be withdrawn from such use or the use permitted only under government regulations, as in the case of forest reserves.

*Itcaina v. Marble*, 56 Nev. 420, 55 P.2d 625 (1936). Finally, the Gardners cannot argue, at least not successfully, that their predecessors acquired vested water rights and that grazing rights are "appurtenant" to such water rights. That argument was expressly rejected long ago. *See Hunter v. United States*, 388 F.2d 148, 153–55 (9th Cir.1967). The argument once had some support under a 1925 Nevada stockwatering statute, *see* NRS 533.495, but the Nevada Supreme Court long ago ruled that this feature of state law is preempted by the federal Taylor Grazing Act, which vested "complete administration and control of the range" in the Bureau of Land Management. *Ansolabehere v. Laborde*, 73 Nev. 93, 310 P.2d 842 (1957).

■ Thus, the fact that their predecessors grazed stock on the land at issue in the 1870's does not mean that the Gardners today have a vested grazing right (a right of "pasturage") immune from federal regulation. On the contrary: use of public lands for stock grazing, either under the original regime of "tacit consent" or under the permit

system after establishment of the national forests, was and is a privilege with respect to the federal government, revocable at any time. The Gardners' use of federal land is subject to regulation by the federal government. If they believe the federal government is acting unfairly or unwisely, the appropriate course of action is to take the complaint to their elected representatives in Congress.

### 3. *Water rights*

The Gardners' argument that they have "valid, vested and existing water rights," because they and their predecessors have used the water for the beneficial use of watering livestock, is also defective. It is true that watering livestock is a beneficial use under Nevada law. NRS 533.490. It is also true that if the Gardners' predecessors acquired vested rights to some quantity of water by virtue of that use, before the land in question was withdrawn from the public domain, then those rights may well be valid even as against federal reserved rights. *See Cappaert v. United States*, 426 U.S. 128, 138, 96 S.Ct. 2062, 2069, 48 L.Ed.2d 523 (1976) ("when the federal government withdraws land from the public domain and reserves it for a federal purpose, . . . the United States acquires a reserved right in *unappropriated* water which vests on the date of the reservation . . ."); *Hunter*, 388 F.2d at 151–53 (appellant had a water right where predecessors had appropriated water for livestock in the public domain, consistent with local practice, before the land in question was designated a national monument); 43 U.S.C. § 661 (water rights vested under local law are protected).

The problem with the Gardners' water rights argument is that the United States has sovereign immunity from suit, which is waived only by the McCarran Amendment. 43 U.S.C. § 666. That statute subjects the United States to the jurisdiction of the state courts when the state courts adjudicate water rights in an entire river system, but it has another consequence, as well: where, as in this case, there is an ongoing, comprehensive adjudication of water rights in an entire river system in the state courts, and where the United States, as in this case, is participating in that adjudication, a water rights suit brought by a private party in a federal district court may be dismissed. *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 565–66, 103 S.Ct. 3201, 3212–13, 77 L.Ed.2d 837 (1983). Dismissal is appropriate here: the state statutes provide a detailed and comprehensive scheme for adjudicating the rights of all claimants to a particular water system, and the State Engineer is currently conducting such an adjudication. The Gardners cannot "opt out" and bring their own claim to federal court.

We would add that the plaintiffs' pleadings in this case, for which we hold plaintiffs' counsel responsible, border on the frivolous and sanctionable under Rule 11. They reflect a lack of research into the most basic legal concepts and principles applicable to this case, and, as noted, are directly contradicted by an unbroken line of Supreme Court precedent.

**IT IS THEREFORE HEREBY ORDERED** that Smith and Chapman's **motion (Doc. # 6 Exh. A)** to dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that **all other named defendants** are also **dismissed.**

**IT IS FURTHER ORDERED** that the United States' **motion (Doc. # 12)** to dismiss, construed as a motion to dismiss on the merits by the sole remaining defendant, is **GRANTED.**

**IT IS FURTHER ORDERED** that the **clerk** shall enter **judgment** on all claims in favor of all defendants and against plaintiffs.