# OMAECHEVARRIA *v.* STATE OF IDAHO.

## ERROR TO THE SUPREME COURT OF THE STATE OF IDAHO.

**No. 102.** Argued December 20, 1917.—Decided March 18, 1918.

A law of Idaho (Rev. Codes, 1908, § 6872), applicable to the public domain, provides that any person having charge of sheep who allows them to graze on any range previously occupied by cattle, is guilty of a misdemeanor, and that priority of possessory right between cattle and sheep owners to any range is to be determined by the priority in the usual and customary use of it, as a cattle or sheep range. Experience, inducing this and similar laws, had, says the Supreme Court of the State, shown that use of a range by sheep unfits it for cattle, but not *vice versa;* and that segregation is essential to protect the cattle industry and prevent serious breaches of the peace between cattlemen and sheepmen.

*Held:* (1) That the police power of the State extends over the federal public domain, at least where there is no legislation by Congress on the subject.

(2) That in segregating sheep from cattle the Idaho law was primarily designed to preserve the peace, and is not an unreasonable or arbitrary exercise of the police power.

(3) That it does not discriminate arbitrarily and deny equal protection in giving preference to cattle owners in prior occupancy without giving a like preference to sheep owners in prior occupancy.

(4) That, as a criminal law, it is not wanting in due process, in failing to provide for the ascertainment of the boundaries of a "range" and for determining what length of time is necessary to constitute a prior occupation a "usual" one within its meaning.

(5) That it is not in conflict with the clause in § 1 of the "act to prevent unlawful occupancy of the public lands," c. 149, 23 Stat. 321, which prohibits the assertion of a right to the exclusive use and occupancy of any part of the public lands without claim or color of title made or acquired in good faith, etc., since that clause, as is shown by an examination of the entire act and its history, prohibits merely the assertion of an exclusive right to use or occupation by force, intimidation, or by what would be equivalent in effect to an enclosure, whereas the state statute makes no grant, and, in so far as this exclusion of sheep from certain ranges approaches a grant

the result is incidental only, and it operates in favor of horse owners as well as cattle owners.

(6) That the exclusion of sheep owners under certain circumstances does not interfere with any rights of a citizen of the United States, Congress not having conferred on citizens the right to graze stock on the public lands, their use for that purpose being merely by sufferance.

27 Idaho, 797, affirmed.

THE case is stated in the opinion.

*Mr. Frank P. Prichard* and *Mr. Shad L. Hodgin* for plaintiff in error.

*Mr. T. A. Walters,* Attorney General of the State of Idaho, and *Mr. William Healy* for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

For more than forty years the raising of cattle and sheep have been important industries in Idaho. The stock feeds in part by grazing on the public domain of the United States. This is done with the Government's acquiescence, without the payment of compensation, and without federal regulation. *Buford* v. *Houtz,* 133 U. S. 320, 326. Experience has demonstrated, says the state court, that in arid and semi-arid regions cattle will not graze, nor can they thrive, on ranges where sheep are allowed to graze extensively; that the encroachment of sheep upon ranges previously occupied by cattle results in driving out the cattle and destroying or greatly impairing the industry; and that this conflict of interests led to frequent and serious breaches of the peace and the loss of many lives.[1] Efficient policing of the ranges is

---

[1] *Sweet* v. *Ballentyne,* 8 Idaho, 431, 447; *Pyramid Land & Stock Co.* v. *Pierce,* 30 Nevada, 237, 253-255. Report of National Conservation Commission, 1909, vol. III (60th Cong., 2nd sess., Senate Doc. No. 676), p. 357. Conference of Governors (1908), p. 143.

impossible; for the State is sparsely settled and the public domain is extensive, comprising still more than one-fourth of the land surface.[1]  To avert clashes between sheep herdsmen and the farmers who customarily allowed their few cattle to graze on the public domain near their dwellings, the territorial legislature passed in 1875 the so-called "Two Mile Limit Law."  It was enacted first as a local statute applicable to three counties, but was extended in 1879 and again in 1883 to additional counties, and was made a general law in 1887.[2]  After the admission of Idaho to the Union, the statute was reenacted and its validity sustained by this court in *Bacon* v. *Walker*, 204 U. S. 311.  To avert clashes between the sheep herdsmen and the cattle rangers, further legislation was found necessary; and in 1883 the law (now § 6872 of the Revised Codes,) was enacted which prohibits any person having charge of sheep from allowing them to graze on a range previously occupied by cattle.[3]  For

---

[1] The land area of Idaho is approximately 53,346,560 acres [U. S. Census (1910), vol. VI, p. 401], of which 20,000,000 acres were specifically classified as grazing lands.  Report of Secretary of Interior (1890), vol. I, p. XCI.  In 1883 about 50,000,000 acres still formed a part of the public domain.  "The Public Domain," by Thomas Donaldson (1884), pp. 528, 529, 1190.  On July 1, 1914, there were still unappropriated and unreserved 16,342,781 acres.  Report of Department of Interior (1914), vol. I, p. 207.  The population of Idaho in 1880 was 32,610; in 1910 it was 325,594.

[2] Acts of January 14, 1875; February 13, 1879; January 31, 1883; Revised Statutes, 1887, § 1210 *et seq.*  The first session of the territorial legislature convened December 7, 1863.  Idaho was admitted to the Union July 3, 1890.

[3] Revised Codes of Idaho, 1908, § 6872:

"Any person owning or having charge of sheep, who herds, grazes, or pastures the same, or permits or suffers the same to be herded, grazed or pastured, on any cattle range previously occupied by cattle, or upon any range usually occupied by any cattle grower, either as a spring, summer or winter range for his cattle, is guilty of a misdemeanor; but the priority of possessory right between cattle and sheep owners to

violating this statute the plaintiff in error, a sheep herds-man, was convicted in the local police court and sentenced to pay a fine. The judgment was affirmed by an inter-mediate appellate court and also by the Supreme Court of Idaho. 27 Idaho, 797. On writ of error from this court the validity of the statute is assailed on the ground that the statute is inconsistent both with the Fourteenth Amendment and with the Act of Congress of February 25, 1885, c. 149, 23 Stat. 321, entitled, "An act to prevent unlawful occupancy of the public lands."

*First:* It is urged that the statute denies rights guar-anteed by the Fourteenth Amendment, namely: Priv-ileges of citizens of the United States, in so far as it pro-hibits the use of the public lands by sheep owners; and equal protection of the laws, in that it gives to cattle own-ers a preference over sheep owners. These contentions are, in substance, the same as those made in respect to the "Two Mile Limit Law," in *Bacon* v. *Walker, supra;* and the answer made there is applicable here. The po-lice power of the State extends over the federal public domain, at least when there is no legislation by Congress on the subject.[1] We cannot say that the measure adopted

---

any range is determined by the priority in the usual and customary use of such range, either as a cattle or sheep range."

[1] The advisability of regulation by some system of leasing or li-censing has been repeatedly recommended to Congress, and bills to that end have been introduced, but none has been enacted. Report of Department of Interior (1902), vol. I, pp. 167–175. Cong. Rec. vol. 35 (1901–1902), pp. 291, 1048. Report of Public Lands Commission, Senate Doc. (1905), 58th Cong., 3rd sess., No. 189, pp. XX–XXIII, 5–61. Cong. Rec., vol. 40 (1905–1906), pp. 54, 1164. Letter from the Acting Secretary of Interior, House Doc. No. 661 (March, 1906). Report of Department of Interior (1907), vol. I, pp. 78–81. Cong. Rec., vol. 42 (1907–1908), p. 14. Report of Department of Interior (1908), vol. I, p. 15. Action of the American National Live Stock Associa-tion relative to the Disposition of the Unappropriated Public Lands of the United States (1908) Report of Department of Interior (1911),

by the State is unreasonable or arbitrary. It was found that conflicts between cattle rangers and sheep herders on the public domain could be reconciled only by segregation. In national forests, where the use of land is regulated by the Federal Government, the plan of segregation is widely adopted.[1] And it is not an arbitrary discrimination to give preference to cattle owners in prior occupancy without providing for a like preference to sheep owners in prior occupancy.[2] For experience shows that sheep do not require protection against encroachment by cattle, and that cattle rangers are not likely to encroach upon ranges previously occupied by sheep herders. The propriety of treating sheep differ-

---

vol. I, p. 9. Cong. Rec., vol. 48 (1911–1912), p. 69. Hearings before the House Committee on Public Lands on H. R. Bill 19857 (1912). Report of Department of Interior (1912), vol. I, p. 5. Cong. Rec., vol. 50 (1913), p. 2365; vol. 51 (1913–1914), pp. 939, 3814. Report of Department of Agriculture (1914), pp. 8–10. Hearing before a subcommittee of the House Committee on Public Lands on H. R. 9582, February 12, 1914, pp. 7–8. "Practical Application of the Kent Grazing Bill to Western & Southwestern Grazing Ranges," address by J. J. Thornber before the American National Live Stock Association, Denver, Colo., January 22, 1914. Report of Department of Agriculture (1915), p. 47. Cong. Rec., vol. 53 (1915–1916), p. 21. Report of Department of Agriculture (1916), pp. 18–19.

[1] National Forest Manual (1913), pp. 13, 28. Hearing before House Committee on H. R. 9582 and H. R. 10539, on Grazing on Public Lands (1914), p. 73. Grazing in Forest Reserves, by F. Roth, Yearbook of Department of Agriculture (1901), pp. 333, 338, 343. Grazing of Live Stock on Forest Reserves, by Gifford Pinchot, Report National Live Stock Association (1902), pp. 274, 275.

[2] In the prolonged discussion of the proposal to correct the abuses of "open range" by leasing government grazing lands, the propriety of safeguarding "rights" as determined by priority of occupancy and use has been generally insisted upon. See Conference of Governors (1908), p. 347; Report of Department of Interior (1902), p. 174; Report of Public Lands Commission, Senate Doc. (1905), 58th Cong., 3rd sess., No. 189, pp. 14, 60 (par. 13); National Forest Manual, June 4, 1913, pp. 53, 58.

ently than cattle has been generally recognized.[1] That
the interest of the sheep owners of Idaho received due
consideration is indicated by the fact that in 1902 they op-
posed the abolition by the Government of the free ranges.[2]

*Second:* It is also urged that the Idaho statute, being
a criminal one, is so indefinite in its terms as to violate
the guarantee by the Fourteenth Amendment of due proc-
ess of law, since it fails to provide for the ascertainment
of the boundaries of a "range" or for determining what
length of time is necessary to constitute a prior occupa-
tion a "usual" one within the meaning of the act. Men
familiar with range conditions and desirous of observing
the law will have little difficulty in determining what is
prohibited by it. Similar expressions are common in
the criminal statutes of other States.[3] This statute pre-
sents no greater uncertainty or difficulty, in application to
necessarily varying facts, than has been repeatedly sanc-
tioned by this court. *Nash* v. *United States,* 229 U. S.
373, 377; *Miller* v. *Strahl,* 239 U. S. 426, 434. Further-
more, any danger to sheepmen which might otherwise
arise from indefiniteness, is removed by § 6314 of Revised
Codes, which provides that: "In every crime or public
offense there must exist a union, or joint operation, of
act and intent, or criminal negligence."

---

[1] Reports of the Department of Interior (1898), vol. I, p. 87; (1899),
vol. I, pp. XX, 105–112; (1900), vol. I, p. 390; (1901), vol. I, p. 127;
Utah (1853), Laws 1851–1870, c. 60, p. 90; Washington, Laws 1907,
p. 78; Arizona, Penal Code, 1913, § 641. See statutes cited, *infra,*
in note 1, p. 352.

[2] Hearings before House Committee on Public Lands on Leasing
Grazing Lands (1902), 57th Cong., 1st Sess., pp. 76–77.

[3] Montana, "Laws" 1871–1872, p. 287, § 87, makes it a crime to
drive stock from a "range" on which they "usually" run. North
Dakota, "Laws," 1891, p. 123, deals with "customary range"; Ari-
zona, Penal Code, 1913, § 637, with "range"; Colorado, Courtright's
Statutes, § 6375, with "usual range"; Texas, Penal Code Annotated,
1916, Art. 1356 (1866), with "accustomed range."

*Third:* It is further contended that the statute is in direct conflict with the Act of Congress of February 25, 1885.[1]  That statute which was designed to prevent the

[1] "An act to prevent unlawful occupancy of the public lands.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all inclosures of any public lands in any State or Territory of the United States, heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation, to any of which land included within the inclosure the person, party, association, or corporation making or controlling the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land-office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any State or any of the Territories of the United States, without claim, color of title, or asserted right as above specified as to inclosure, is likewise declared unlawful, and hereby prohibited.

"Sec. 2. That it shall be the duty of the district attorney of the United States for the proper district, on affidavit filed with him by any citizen of the United States that section one of this act is being violated showing a description of the land inclosed with reasonable certainty, not necessarily by metes and bounds nor by Governmental sub-divisions of surveyed lands, but on  so that the inclosure may be identified, and the persons guilty of t.. violation as nearly as may be, and by description, if the name cannot on reasonable inquiry be ascertained, to institute a civil suit in th proper United States district or circuit court, or territorial dist  court, in the name of the United States, and against the parties named or described who shall be in charge of or controlling the inclosure complained of as defendants; and jurisdiction is also hereby conferred on any United States district or circuit court or territorial district court having jurisdiction over the locality where the land inclosed, or any part thereof, shall be situated, to hear and determine proceedings in equity, by writ of injunction, to restrain violations of the provisions of this act; and it shall be sufficient to give the court jurisdiction if service of original process be had in any civil proceeding on any agent or em'

illegal fencing of public lands, contains at the close of § 1 the
following clause with which the Idaho statute is said to con-
flict: "and the assertion of a right to the exclusive use and
occupancy of any part of the public lands of the United

ployee having charge or control of the inclosure; and any suit brought
under the provisions of this section shall have precedence for hearing
and trial over other cases on the civil docket of the court, and shall
be tried and determined at the earliest practicable day. In any case
if the inclosure shall be found to be unlawful, the court shall make
the proper order, judgment, or decree for the destruction of the in-
closure, in a summary way, unless the inclosure shall be removed by the
defendant within five days after the order of the court.

"Sec. 3. That no person, by force, threats, intimidation, or by
any fencing or inclosing, or any other unlawful means, shall prevent
or obstruct, or shall combine and confederate with others to prevent
or obstruct, any person from peaceably entering upon or establishing
a settlement or residence on any tract of public land subject to settle-
ment or entry under the public land laws of the United States, or shall
prevent or obstruct free passage or transit over or through the pub-
lic lands: *Provided,* This section shall not be held to affect the right
or title of persons, who have gone upon, improved or occupied said
lands under the land laws of the United States, claiming title thereto,
in good faith.

"Sec. 4. That any person violating any of the provisions hereof,
whether as owner, part owner, or agent, or who shall aid, abet, counsel,
advise, or assist in any violation hereof, shall be deemed guilty of a
misdemeanor and fined in a sum not exceeding one thousand dollars
or be imprisoned not exceeding one year, or both, for each offense.
[As amended by Act of March 10, 1908, c. 75, 35 Stat. 40.]

"Sec. 5. That the President is hereby authorized to take such
measures as shall be necessary to remove and destroy any unlawful
inclosure of any of said lands, and to employ civil or military force as
may be necessary for that purpose.

"Sec. 6. That where the alleged unlawful inclosure includes less
than one hundred and sixty acres of land, no suit shall be brought
under the provisions of this act without authority from the Secre-
tary of the Interior.

"Sec. 7. That nothing herein shall affect any pending suits to
work their discontinuance, but as to them hereafter they shall be pros-
ecuted and determined under the provisions of this act.

"Approved, February 25th, 1885."

States in any State or any of the Territories of the United
States, without claim, color of title, or asserted right as
above specified as to inclosure, is likewise declared un-
lawful, and hereby prohibited."

An examination of the federal act in its entirety makes
it clear that what the clause quoted from § 1 sought to
prohibit was merely the assertion of an exclusive right
to use or occupation by force or intimidation or by what
would be equivalent in effect to an enclosure. That this
was the intent of Congress is confirmed by the history of
the act. The reports of the Secretary of the Interior
upon whose recommendation the act was introduced,
the reports of the committees of Congress, and the de-
bates thereon indicate that this alone was the evil sought
to be remedied,[1] and to such action only does its pro-
hibition appear to have been applied in practice.[2] Al-
though Idaho had, by statute, excluded sheep from por-
tions of the public domain since 1875—no reference to
the fact has been found in the discussion which preceded
and followed the enactment of the federal law, nor does
any reference seem to have been made to the legislation
of other States which likewise excluded sheep, under
certain circumstances, from parts of the public do-

---

[1] Reports of Department of Interior (1882), vol. I, p. 13; (1883),
vol. I, pp. XXXII, 30, 210; (1884), vol. I, pp. XVII, 17; (1885), vol. I,
p. 205. Letter of Secretary of Interior (1884), Senate Ex. Doc. (1883–
1884), No. 127. Report of House Committee, 48th Cong., 1st sess.
(1884), No. 1325; Report of Senate Committee, 48th Cong., 2nd sess.
(1885), No. 979. Cong. Rec., vol. 15 (1883–1884), pp. 4768–4783; vol.
16 (1884–1885), p. 1457.

[2] *United States* v. *Brandestein*, 32 Fed. Rep. 738, 741; Reports of
Department of Interior (1885), vol. I, p. 44; (1886), vol. I, pp. 30–41;
(1887), vol. I, pp. 12–13; (1888), vol. I, p. XVI; (1901), vol. I, p. 92;
(1902), vol. I, pp. 11, 172–173, 306; (1903), vol. I, pp. 18–19; (1904),
vol. I, pp. 20, 367; (1905), vol. I, p. 20; (1908), vol. I, p. 15; (1915),
vol. I, p. 226.

Compiled Statutes, §§ 4997–5002, notes.

main.[1] And no case has been found in which it was even urged that these state statutes were in conflict with this act of Congress.

The Idaho statute makes no attempt to grant a right to use public lands. *McGinnis* v. *Friedman*, 2 Idaho, 393. The State, acting in the exercise of its police power, merely excludes sheep from certain ranges under certain circumstances. Like the forcible entry and detainer act of Washington, which was held in *Denee* v. *Ankeny, ante*, 208, not to conflict with the homestead laws, the Idaho statute was enacted primarily to prevent breaches of the peace. The incidental protection which it thereby affords to cattle owners does not purport to secure to any of them, or to cattle owners collectively, "the exclusive use and occupancy of any part of the public lands." For every range from which sheep are excluded remains open not only to *all* cattle, but also to horses, of which there are many in Idaho.[2] This exclusion of sheep owners under certain circumstances does not interfere with any rights of a citizen of the United States. Congress has not conferred upon citizens the right to graze stock upon the public lands. The Government has merely suffered the lands to be so used. *Buford* v. *Houtz, supra*. It is because the citizen possesses no such right that it was held by this court that the Secretary of Agriculture might, in the exercise of his general power to regulate forest reserves, exclude sheep and cattle therefrom. *United States* v. *Grimaud*, 220 U. S. 506; *Light* v. *United States*, 220 U. S. 523.

---

[1] Statutes resembling the Idaho "Two Mile Limit Law" have been passed in a number of the western States. Arizona, Act of February 12, 1875, Compiled Laws, 1864–1877, p. 561; Penal Code of Arizona, 1913, § 639; Colorado, Courtright's Statutes, § 6377 (1877); Nevada, Revised Laws, 1912, § 2317 (1901), § 2319 (1907); California, Statutes, 1869–1870, p. 304.

[2] Compare U. S. Census (1910), vol. VI, p. 390; Report, Department of Agriculture (1914), p. 148.

All the objections urged against the validity of the statute are unsound.  The judgment of the Supreme Court of Idaho is

*Affirmed.*

MR. JUSTICE VAN DEVANTER and MR. JUSTICE MC-REYNOLDS dissent.