## UNITED STATES v. SPECTOR.

### Cr. No. 21844.

United States District Court
S. D. California, Central Division.

Sept. 12, 1951.

Ernest A. Tolin, Ray H. Kinnison and Angus D. McEachen, all of Los Angeles, Cal., for plaintiff.

Margolis & McTernan, Los Angeles, Cal., for defendant.

A. L. Wirin, Los Angeles, Cal., amicus curiæ.

MATHES, District Judge.

Defendant stands indicted for alleged violations of those provisions of § 23 of the Internal Security Act of 1950, 64 Stat. 1010, 8 U.S.C.A. § 156(c), which declare that:

"Any alien against whom an order of deportation is outstanding * * * who shall willfully fail or refuse to depart from the United States within a period of six months from the date of such order of deportation, or from September 23, 1950, whichever is the later, or shall willfully fail or refuse to make timely application in good faith for travel or other documents necessary to his departure * * * shall upon conviction be guilty of a felony, and shall be imprisoned not more than ten years * * *."

The indictment contains four counts averring that defendant is an alien against whom an order of deportation entered August 13, 1930 is outstanding, and that "during the period of six months from September 23, 1950," defendant did wilfully "fail to depart from the United States" [Count 1]; "fail to make timely application in good faith for travel or other documents necessary to his departure from the United States" [Count 2]; "refuse to depart from the United States" [Count 3]; and "refuse to make timely application in good faith for travel or other documents necessary to his departure from the United States" [Count 4].

Defendant moves to dismiss the indictment. In support of the motion he urges the above-quoted provisions of § 23 of the Act must be held unconstitutional, see Yick Wo v. Hopkins, 1886, 118 U.S. 356, 369, 6 S.Ct., 1064, 30 L.Ed. 220; Wong Wing v. United States, 1896, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140, upon the grounds inter alia that the statute denies defendant due process of law, U.S.Const Amend. V, is an ex post facto law, U.S.Const. art. 1, § 9, and imposes cruel and unusual punishment. U.S.Const. Amend. VIII.

In "The Chinese Exclusion Case" Chae Chan Ping v. United States, 1889, 130 U.S. 581, 606–607, 609, 9 S.Ct. 623, 630, 32 L.Ed. 1068, the Supreme court said: "The power of the government to exclude foreigners from the country whenever, in its judgment, the public interests require such exclusion, has been asserted in repeated instances, and never denied * * *. The power of exclusion of foreigners being an incident of sovereignty belonging to the government of the United States * * *."

Later in Fong Yue Ting v. United States, 1893, 149 U.S. 698, 707, 13 S.Ct. 1016, 1019, 37 L.Ed. 905, the Court declared that: "The right of a nation to expel or deport foreigners * * * rests upon the same grounds, and is as absolute and unqualified, as the right to prohibit and prevent their entrance into the country."

The statute at bar was enacted in exercise of this inherent right of sovereignty. The Congress in effect has ordered all aliens against whom an order of deportation is outstanding to depart from this country within a specified period, and provided for the punishment of any who wilfully fail or refuse "to depart" or "to make

timely application * * * for travel or other documents necessary to * * * departure". 8 U.S.C.A. § 156(c).

Defendant asserts that this congressional enactment "is so vague and indefinite that it fails to give due notice of what it punishes" and hence falls within the constitutional prohibition of the Fifth Amendment that "No person shall be * * * deprived of life, liberty, or property, without due process of law * * *."

█ The due process clause of the Fifth Amendment requires that "criminal statutes * * * give due notice that an act has been made criminal before it is done * * *", Jordan v. DeGeorge, 1951, 341 U.S. 223, 230, 71 S.Ct. 703, 707, because "Every man should be able to know with certainty when he is committing a crime", United States v. Reese, 1875, 92 U.S. 214, 220, 23 L.Ed. 563. Hence "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 1926, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed 322.

█ If challenged as repugnant to the due process clause of the Fifth Amendment, a statute must be tested "on its face"; for it is "the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." Lanzetta v. New Jersey, 1939, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888; United States v. Petrillo, 1947, 332 U.S. 1, 6–7, 67 S.Ct. 1538, 91 L.Ed. 1877; cf. Dennis v. United States, 1951, 341 U.S. 494, 515, 71 S.Ct. 857, opinion of Vinson, C. J.

First challenged by defendant are those provisions of § 23 of the Internal Security Act of 1950, 64 Stat. 1010, 8 U.S.C.A. § 156(c), which declare guilty of a felony "Any alien against whom an order of deportation is outstanding * * * who shall willfully fail or refuse to depart from the United States within a period of six months from * * * September 23, 1950".

█ I find in this language no uncertainty "which deprives a person of the ability to predetermine whether a contemplated action (omission) is criminal under the provisions of this law." Gorin v. United States, 1941, 312 U.S. 19, at page 27, 61 S. Ct. 429, at pages 433, and 434, note 13, 85 L.Ed. 488. The act commanded to be done, the identity of the group subject to the command, and the time limit for performance, all are clear and specific. That part of the statute which serves as the basis for the first and third counts of the indictment must therefore be held to meet fully the constitutional requirement of certainty within the "due process" clause of the Fifth Amendment.

Next to be considered are the provisions of § 23 declaring guilty of a felony "Any alien against whom an order of deportation is outstanding * * * who shall willfully fail or refuse * * * to make timely application in good faith for travel or other documents necessary to his departure * * *." This portion of the statute is involved in the second and fourth counts of the indictment.

Assuming that "timely application" means an application made early enough to enable the alien "to depart from the United States within a period of six months from the date of * * * order of deportation, or from September 23, 1950, whichever is the later", see 8 U.S.C.A. § 156(c), the questions remain (1) for what and (2) to whom shall the application be made.

The statute merely provides that timely application be made "for travel or other documents necessary to his departure". Would "timely" purchase of a Sunday bus ticket to Tijuana across the Mexican border suffice? Or would it be necessary to obtain more formal "travel or other documents necessary to * * * departure" in order to avoid criminality?

If it be assumed the "travel or other documents" referred to must mean passports, visas, permits or the like, there still remains the question whether the statute commands the alien to make "timely application" therefor to only one foreign country, or to all foreign countries maintaining consulates in the city, county and state of the alien's residence, or to all embassies and consulates in the nation's capitol.

See United States v. Evans, 1948, 333 U.S. 483, 486–488, 495, 68 S.Ct. 634, 92 L.Ed. 823.

Elaboration seems surplusage. This part of § 23 commands the alien "to determine his conduct not * * * by reference to knowable criteria, but by * * * conjecture * * *." Collins v. Kentucky, 1914, 234 U.S. 634, 638, 34 S.Ct. 924, 925, 58 L.Ed. 1510.

Where a criminal statute forbids affirmative action, one in doubt as to precisely what is forbidden can escape a charge of criminality by avoiding all conduct closely resembling the uncertain acts so forbidden. See United States v. Petrillo, supra, 332 U.S. at pages 5–8, 67 S.Ct. at pages 1540–1542; United States v. Alford, 1927, 274 U.S. 264, 267, 47 S.Ct. 597, 71 L.Ed. 1040; Omaechevarria v. Idaho, 1918, 246 U.S. 343, 348, 38 S.Ct. 323, 62 L. Ed. 763. But even that method of compliance is not available where the statute makes criminal an omission or failure to act. For a statute prohibiting an omission is in effect a law commanding action; and no one can foretell compliance unless the command be reasonably specific.

■ So if specificity be essential to due process, and hence to the constitutionality of criminal statutes forbidding affirmative action, see United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 89, 41 S.Ct. 298, 65 L.Ed 516; Stromberg v. California, 1931, 283 U.S. 359, 369, 51 S.Ct. 532, 75 L. Ed. 1117; Herndon v. Lowry, 1937, 301 U.S. 242, 261–264, 57 S.Ct. 732, 81 L.Ed. 1066, statutes making criminal an omission should a multo fortiori specifically declare what action is required for compliance, to the end that all may know precisely what affirmative conduct is required to avoid commission of a crime. See Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed 1495.

The government however points to the fact that § 23 specifies one must "willfully" fail or refuse to perform the acts commanded in order to commit the offense, and urges that despite any indefiniteness in language the provisions in question give due notice of conduct made criminal because "punishment is imposed only for a neglect of duty knowingly omitted with the purpose of omitting that which the statute requires." But again, although the element of wilfulness may compensate for some lack of specificity in a criminal statute forbidding affirmative acts, see Williams v. United States, 1951, 341 U.S. 97, 101, 71 S. Ct. 576; American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 413, 70 S.Ct. 674, 94 L.Ed. 925; Screws v. United. States, supra, 325 U.S. at page 101, 65 S.Ct. at page 1035; United States v. Ragen, 1942, 314 U.S. 513, 524, 62. S.Ct. 374, 86 L.Ed 383; Omaechevarria v. Idaho, supra, 246 U.S. at page 348, 38 S.Ct. at page 325, it can serve no such purpose where as here the statute condemns inaction and constitutes in effect a command to do some vague and indefinite act or series of acts.

■ Since all are entitled to be informed—indeed are presumed to know—what the law forbids and what the law commands, Hamburg-American Line v. United States, 1934, 291 U.S. 420, 426, 54 S.Ct. 491, 78 L.Ed. 887 the law should not "lag behind common sense." Ludecke v. Watkins, 1948, 335 U.S. 160, 166–167, 68 S.Ct. 1429, 1432, 92 L.Ed 881. And common sense as well as our concept of due process of law dictate that standards of proscibed conduct be even more definite where the conduct forbidden is an omission. See Viereck v. United States, 1943, 318 U. S. 236, 241–243, 245, 63 S.Ct. 561, 87 L.Ed. 734.

■ The provisions of § 23 of the Internal Security Act of 1950, 64 Stat. 1010, 8 U.S.C.A. § 156(c), upon which the second and fourth counts of the indictment are based must therefore be held to be too vague and uncertain to meet the essential requirements of due process of law within the Fifth Amendment.

■ Defendant's remaining contentions of unconstitutionality cannot be sustained. In view of the nation's inherent right to expel and deport aliens, Fong Yue Ting v. United States, supra, 149 U.S. at page 707, 13 S.Ct. at page 1019, punishing those against whom an order of deportation is outstanding who "willfully fail or refuse to depart", 8 U.S.C.A. § 156(c), is clearly not a violation of due process.

Nor is maximum punishment of ten years imprisonment for such an offense "cruel and unusual" within the meaning of the constitutional limitation. U.S.Const. Amend. VIII; Becker v. United States, 9 Cir., 1937, 91 F.2d 550; United States v. Sorcey, 7 Cir., 1945, 151 F.2d 899, 902–903, certiorari denied 1946, 327 U.S. 794, 66 S. Ct. 821, 90 L.Ed. 1021; cf. Weems v. United States, 1910, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793. And since the conduct proscribed by the provision "willfully fail or refuse to depart" is only such as occurs more than six month after the date of enactment of the statute, see 8 U.S.C.A. § 156(c), it is not an "ex post facto Law." U.S.Const. art. 1, § 9; Garner v. Board of Public Works of City of Los Angeles, 1951, 341 U.S. 716, 721, 71 S.Ct. 909.

■ Defendant urges dismissal upon the further ground that the third and fourth counts of the indictment charge the same offenses as the first and second counts. It is permissible to charge a single offense in different ways and separate counts, but upon conviction punishment may be imposed only for a single offense. See Barnes v. United States 9 Cir., 1944, 142 F.2d 648, 650; United States v. Bent, 8 Cir., 1949, 175 F.2d 397, 400; Fed.R.Cr.P. 8(a), 18 U.S.C.A.; 2 Wharton's Criminal Evidence § 1033 (11th ed.1935); cf. Catrino v. United States, 9 Cir., 1949, 176 F.2d 884, 888.

For the reasons stated defendant's motion to dismiss should be and is hereby granted as to the second and fourth counts of the indictment and denied as to the first and third counts.