UNITED STATES of America, Appellant,

v.

Bill HATAHLEY et al., Appellees.

Nos. 4933, 4952.

United States Court of Appeals, Tenth Circuit.

March 1, 1955.

Rehearing Denied No. 4933 April 15, 1955.

S. Billingsley Hill, Washington, D. C., (Perry W. Morton, Asst. Atty. Gen., A. Pratt Kesler, U. S. Atty., Llewellyn O. Thomas, Asst. U. S. Atty., Salt Lake City, Utah, and John F. Cotter, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellant.

Milton A. Oman, Salt Lake City, Utah (Delbert M. Draper, Salt Lake City, Utah, was with him on the brief), for appellees.

Before MURRAH and PICKETT, Circuit Judges, and SAVAGE, District Judge.

PICKETT, Circuit Judge.

The plaintiffs, all Navajo Indians, brought this action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2671 et seq., to recover damages for the unlawful seizure and destruction of one hundred and fifteen horses and thirty-five burros belonging to plaintiffs. Agents of the Bureau of Land Management, ostensibly acting under the Utah "abandoned horse" statute, and under the direction of the Board of County Commissioners of San Juan County, Utah, rounded up and disposed of the horses and burros owned by the different plaintiffs. A joint judgment for $100,000 was prayed for and entered by the court. The court also entered a judgment enjoining the United States and its agents from further molesting the plaintiffs and their families in their possession and use of certain public lands; from molesting or interfering with plaintiffs' livestock on said lands; and from disposing of the lands or any interest therein. Some time thereafter the trial court denied a motion to dissolve the injunction. The United States has appealed from the judgment and the order overruling the motion to dissolve the injunction.

The complaint alleges that employees of the Department of Interior in the administration of the public domain in the State of Utah, wrongfully and unlawfully seized possession of the thirty-five burros and one hundred and fifteen horses, knowing them to be the property of the plaintiffs, and disposed of or destroyed them. It was alleged that the acts of the agents were part of a plan to deprive the plaintiffs of their livestock; to drive them from their ancestral homes and ranges; to reduce them to a condition of helplessness and want; to subject them to extreme fear and worry; and that the plaintiffs have been grievously harassed, distressed, persecuted, troubled and reduced to acute and shameful want, and were deprived of means to properly care for their livestock. The defense was that the plaintiffs' stock was trespassing on public domain which was included in a district created under the Taylor Grazing Act; that permits to use the land had been issued to others; and that the livestock in question had been seized, disposed of, or destroyed under the direction of the Board of County Commissioners of San Juan County, Utah, after a compliance with the Utah "abandoned horse" statute. 5 U.C.A. 1953, Title 47, Ch. 2.

The area involved is public domain administered under the Taylor Grazing Act, 43 U.S.C.A. § 315 et seq., as part of the Utah Grazing District No. 6 in San Juan County located in the southeast corner of the State of Utah immediately north of the Navajo Indian Reservation. The plaintiffs, although Navajo Indians, had not remained on the reservation and had continued to graze their livestock upon the range. Since the creation of the District there has been a continuous effort to prevent nonpermittees, including these plaintiffs, from grazing their livestock upon the range. Those who had permits to graze their livestock within the area brought an action in the Utah State Court against certain Navajo Indians, including some of these plaintiffs, to enjoin them from using the lands. The action resulted in a judgment holding that the Indians had no rights upon the lands and the issuance of an injunction against further use of it by them. Young v. Felornia, Utah, 244 P.2d 862, certiorari denied 344 U.S. 886, 73 S.Ct. 186, 97 L.Ed. 685. In 1950, the United States brought a similar action in the United States District Court of Utah, United States v. Hosteen Tse-Kesi, 93 F.Supp. 745. The trial court entered summary judgment dismissing the complaint but this court reversed, and ordered the complaint reinstated. United States v. Hosteen Tse-Kesi, 10 Cir., 191 F.2d 518. After remand the case was considered moot and was dismissed.[1]

In 1952, after a report that there were abandoned horses on the open range in San Juan County, the Bureau of Land Management, acting upon the recommendation of the District Advisory Board,[2] decided to request the Board of County Commissioners to proceed under the Utah "abandoned horse" statute for the purpose of eliminating abandoned horses from this range. The Range Manager of District No. 6 appeared before the Board of County Commissioners on July 1, 1952, and requested that proceedings be instituted for this purpose. A motion to adopt a resolution to authorize such proceedings was unanimously passed, but no record of this action was shown in the minutes of that meeting. The county clerk testified that the failure of the minutes to show this action may have been her fault. The individual members of the Board of County Commissioners signed a resolution on July 9, 1952. This

1. The order dismissing the action stated that it appeared to the court upon representation of the Bureau of Land Management, "That the defendants have returned to the Reservation and that there are no more trespassers, the questions involved in this case therefore being moot * * *."

2. The Taylor Grazing Act provides for the creation of an Advisory Board composed of local stockmen in each grazing district. The function of the Board is to make recommendations as to the administration of the Act within the District. 43 U.S.C.A. § 315; Federal Range Code for Grazing Districts, Sec. 161.12(i), 43 CFR 161.12(i).

resolution provided that the Advisory Board of Monticello Grazing District, Utah 6, was "exclusively engaged to remove said horses under the direction of this Commission." Pursuant to the resolution, the statutory notices were published, beginning on July 10, 1952. The notices announced that the elimination drive would start on August 10, 1952, and stated that "All the owners of horses running upon the open range are hereby given notice to file with the Board of County Commissioners within thirty (30) days from the date given below, a description of such horses and the brands and marks thereon. Dated this tenth day of July, 1952. * * *"[3] At the September meeting, the County Commissioners directed that the July 9, 1952, resolution be inserted in the minutes of the Board.

The drive got under way on September 19, 1952, and continued until the date when this action was filed. Agents of the Bureau of Land Management, assisted from time to time by the county sheriff and livestock operators who had grazing permits, rounded up the horses and burros with which we are here concerned, together with a few others. The animals were either driven or hauled in trucks to corrals at nearby Blanding, Utah, where they were kept for a period of about two weeks. A few of the animals were disposed of on the range because they were not in condition to be moved, or were injured; some fifteen horses were sold locally; a small number were redeemed and returned to owners; and the remainder were transported by trucks to a packing company near Provo, Utah, where they were sold for not more than three cents per pound. A total of $1,700 was received from the sale of the animals, and that sum was retained by the District Advisory Board as directed by the Board of County Commissioners. All of the horses and burros in question were running on the open range. It was generally known to those who were rounding up the animals that they belonged to Indians, but none of the owners of any of the animals had filed a description of his animals with the Board of County Commissioners showing the marks and brands of his animals as required by the notice. Some of the horses were branded, but there is a dispute as to whether any of the owners had recorded the brands as required by Utah statute. Some of the plaintiffs testified that the brands on their horses were recorded. A representative of the Bureau of Land Management who had a Utah brand book testified that none of the animals were branded with recorded brands. The state brand records were not produced. The trial court found that the horses were plainly branded and that some bore recorded brands.

The trial court held that the roundup and destruction of the plaintiffs' animals was willful, wanton and malicious and part of a plan to drive the plaintiffs from the range; that by the enactment of the Taylor Grazing Act, the United States undertook complete control and supervision of its own lands; and that the state statutes having to do with the control of livestock thereon became ineffective, but that if the Utah statute were effective, its provisions had not been complied with by the Board of County Commissioners and the proceedings thereunder were a nullity. The court also held that the animals taken and

3. The statutory form of notice is as follows, 5 U.C.A.1953, Title 47, Ch. 2, § 47-2-4:

"Notice is hereby given that in accordance with the provisions of law the board of county commissioners of ........... County, Utah, will proceed to eliminate abandoned horses from the open range in said county, and that beginning on the ......... day of ..........., 19...., a drive will be held, and all abandoned horses running upon the open range will, under the direction and supervision of the county commissioners, be eliminated. All owners of horses running upon the open range are hereby given notice to file with the board of county commissioners a description of such horses and the brands or marks thereon.

"Dated this .......... day of ..........., 19.....

"By order of the board of county commissioners of ........... County, Utah.

".........................."
County Clerk.

destroyed were not abandoned animals within the meaning of the Utah statute.

As grounds for reversal, the appellant presents four contentions: one, that the district court exhibited such a hostile attitude toward the government's case and its witnesses that it prejudiced appellant's conduct of the trial and the court's findings and decision; two, that the Utah statute providing for the elimination of abandoned horses from the federal domain was applicable even after the enactment of the Taylor Grazing Act, and such statutes were complied with and the plaintiffs' animals were abandoned within the meaning of the state statute; three, that the damages were excessive; and four, that the trial court erred in entering and continuing a restraining order against the United States.

While the record discloses that the case was tried in an atmosphere of maximum emotion and a minimum of judicial impartiality, and that the amount of the judgment appears to be more for punishment because of the methods used in eliminating the animals, rather than for the damages suffered, we shall not discuss these questions as we have concluded that the case should be disposed of upon the determination of the applicability of the Utah statute. This also makes it unnecessary to consider the validity of the restraining order, or whether the action may be maintained under the Federal Tort Claims Act.[4] Nor will we consider whether the entry of a joint judgment in a case of this kind, where each plaintiff has a separate claim, is in accordance with Rule 20(a). Fed. Rules Civ.Proc. rule 20(a), 28 U.S.C.A.

Section 161.10 of the Federal Range Code for Grazing Districts (43 CFR 161.10) prohibits the grazing of livestock upon the federal range without an appropriate license or permit. Section 161.11 (a) provides that whenever it appears that there has been a willful violation of any provision of the Act, or the Range Code for Grazing Districts, the range manager shall notify the alleged violator and any interested lien holder in writing setting forth the act or acts constituting the violation. If the charge consists of unlawfully grazing livestock on the federal range, Section 161.11(b) requires that the notice served shall order the violator to remove the livestock within a specified time. In case the violator fails to comply with the notice, "the range manager may proceed to exercise the proprietary right of the United States in the Federal range, under local impoundment law and procedure, if practicable; otherwise he may refer the matter through the usual channels for appropriate legal action by the United States against the violator." Violations of the provisions of the Act or the Range Code are punishable by a fine of not to exceed $500.00. 43 U.S.C.A. § 315a. The remedy provided for in Section 161.-11(b) is directed against the individual violators of the code for unlawfully allowing their stock to graze on the federal range, and not against the livestock. It provides no method of impounding the stock except through procedures under the local state statutes. It makes no reference to and has no application whatsoever to a program for the elimination of abandoned stock on the federal range. There is no inconsistency in its provisions and the Utah "abandoned horse" statute. To hold that the Bureau of Land Management is limited to the proceedings under Section 161.11(b) would render it powerless to eliminate abandoned stock from a grazing district, even though an orderly procedure is sanctioned by state law and has been in effect in the range country for many years.

■■ Article 4, Section 3, Clause 2 of the United States Constitution con-

---

4. The program was inaugurated by the Board of County Commissioners and the Advisory Board was engaged to effectuate the same under the direction of the County Board. There was no statutory authority authorizing the United States to eliminate abandoned horses from the range. The question of whether the Range Manager in carrying out the program was acting for the Board or the United States was not considered by the trial court. Neither has it been presented here and we shall not consider it.

fers upon Congress the unlimited power to control and dispose of the public domain. State of Alabama v. State of Texas, 347 U.S. 272, 74 S.Ct. 481, 98 L.Ed. 689; Federal Power Commission v. Idaho Power Co., 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15. When the congressional power has been exercised within the borders of a state, neither the state nor any of its agencies have power to interfere. Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; Griffin v. United States, 8 Cir., 168 F.2d 457. States may exercise jurisdiction within the limits of the public domain, but this jurisdiction cannot extend to any matter inconsistent with the full power of the United States to control the use of such lands. Utah Power & Light Co. v. United States, supra.

■■ There is no indication in the Taylor Grazing Act that Congress intended that the entire field of law and management of the public domain was to be preempted by the United States. The Taylor Grazing Act and the Range Code appear to be to the contrary. The purpose of the Act is to stabilize the livestock industry and to permit the use of the public range by qualified permit holders. It seeks to provide for the most beneficial use of the public range and to protect grazing rights. Chournos v. United States, 10 Cir., 193 F.2d 321, certiorari denied 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed 1369; Red Canyon Sheep Co. v. Ickes, 69 App.D.C. 27, 98 F.2d 308. 43 U.S.C.A. § 315n provides: "Nothing in this chapter shall be construed as restricting the respective States from enforcing any and all statutes enacted for police regulation, nor shall the police power of the respective States be, by this chapter, impaired or restricted, and all laws heretofore enacted by the respective States or any thereof, or that may hereafter be enacted as regards public health or public welfare, shall at all times be in full force and effect: *Provided, however,* That nothing in this section shall be construed as limiting or restricting the power and authority of the United States." It is not suggested that the Utah "abandoned horse"

statute does not constitute a proper exercise of the state's police power or that it does not relate to public health or public welfare. The police power of the state extends over the federal public domain within the state unless Congress has determined to deal exclusively with the subject. Omaechevarria v. State of Idaho, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763; State of Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; International Bridge Co. v. People of State of New York, 254 U.S. 126, 41 S.Ct. 56, 65 L.Ed. 176. We find nothing in the Taylor Grazing Act that suggests an intent to suspend local law which is not in conflict with the provisions of the Act or the regulations promulgated thereunder. On the contrary, we think the Act specifically provides that the local law shall not be suspended.

■ This brings us to the question of whether the provisions of the Utah "abandoned horse" statute were complied with, and if the animals in question were in fact abandoned horses. The Utah statute provides that Boards of County Commissioners may provide for the elimination of abandoned horses in the respective counties by causing notice to be published once a week for three successive weeks in some newspaper of general circulation published in the county, and by posting such notice in at least five public places outside the county seat on public highways in such county and in three public places at the county seat, one of which shall be at the front door of the court house. The notices posted outside the county seat must be not less than two miles apart and all posted notices must be posted at least thirty days before the beginning of the elimination of abandoned horses from the range in such county. 5 U.C.A.1953, Title 47, Ch. 2, § 47–2–4. No question is raised as to the sufficiency of the notices or that they were not published in accordance with the statutory provisions. The evidence is also without conflict that the County Commissioners in a regular meeting authorized the elimination program at the request of the Range Manager. No formal resolution was adopted at that

meeting. None is required by the statute. The procedure of the Commissioners may not measure up to the strictest parliamentary practice, but the record discloses that positive action was taken by the Board in a regular meeting. The fact that the Board later sought to complete its minutes by inserting a resolution therein would not affect the validity of its previous action.

The Utah statute provides that, "It shall be unlawful for any person to suffer or permit any abandoned horse to run at large upon the open range, and every abandoned horse is declared to be a public nuisance and a public menace, and is condemned subject to the right of its owner to reclaim it under the conditions hereinafter provided." 5 U.C.A.1953, Title 47, Ch. 2, § 47–2–3. "Open range" means all lands not privately owned, including roads, whether or not the same have been formally dedicated to the public. 5 U.C.A.1953, Title 47, Ch. 2, § 47–2–2.

The owner of any horses which are running at large in any county in which the county commissioners have given notice of intention to eliminate abandoned horses, may within thirty days after the posting of the first publication of notice, file with the Board of County Commissioners a description of his horses, giving the marks and brands, if any, which appear on them. If the Board of County Commissioners takes into its possession any horses so claimed, it must notify the owner by registered letter that the horses may be claimed within ten days after the mailing of such notice. The owner may take possession of the horses upon the payment of the expenses of caring for them from the date of the capture. If any horse is killed by the County Commissioners after a description has been reported to them, the owner must be paid as damage not exceeding the sum of Ten Dollars for each animal, provided taxes assessed against the animal have been paid. 5 U.C.A.1953, Title 47, Ch. 2, § 47–2–6. The plaintiffs in this action filed no claims or descriptions of horses with the Board as required by the notices. Under such circumstances the statute does not require the Board to make any inquiry concerning the ownership of the horses rounded up.

The Utah statute clearly defines the term "abandoned horse" and contemplates their destruction. It is said to mean, "any horse, ass, mule or other animal of the genus equus, unbranded, or, if branded, that has escaped assessment for taxation for the year next preceding the killing of such animal as hereinafter provided for, and running at large upon the open range of this state, * * *. An animal not bearing a decipherable brand recorded in the office of the recorder of marks and brands shall be deemed unbranded." 5 U.C.A.1953, Title 47, Ch. 2, § 47–2–1. Clearly, under the terms of this statute, any horse which is unbranded or any branded horse which has escaped assessment for taxation the year preceding the one in which it was killed, is an abandoned horse. The dictionary definition of the term "abandoned" has no application.

The plaintiffs seek to recover damages for the unlawful disposition of their animals. The County Commissioners lawfully inaugurated a program to eliminate abandoned horses from the open range and lawfully disposed of animals which belonged to the plaintiffs. The burden is upon the plaintiffs to prove that they complied with the notices and that the animals which belonged to them and which were disposed of, were not abandoned horses as defined by the statute. This, they failed to do. The actual knowledge of the ownership of the abandoned animals by the County Commissioners or those in charge of the elimination program in their behalf is not material, and the Utah statute is clear on the subject. The statute provides a method whereby the plaintiffs could have obtained their animals and since they failed to avail themselves of that right, they cannot complain. The method of disposing of abandoned horses may appear to be harsh, but the remedy, if any, is in the legislature and not the courts.

Judgment is reversed and the cause remanded with instructions to dissolve the injunction and enter judgment for the defendant.