TEXAS OIL AND GAS CORP., a corporation, and John H. Hill, an individual, Plaintiffs,

v.

PHILLIPS PETROLEUM COMPANY, a corporation, Defendant.

Civ. No. 66-241.

United States District Court
W. D. Oklahoma.

Dec. 18, 1967.

George L. Verity, Brown, Verity & Brown, Oklahoma City, Okl., for plaintiffs.

Edward J. Fauss, Don Jemison, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiffs own oil and gas leases on federal lands situated in Oklahoma. The Federal Government executed these oil and gas leases pursuant to the Federal Mineral Leasing Act of 1920, as amended, Title 30, United States Code, Section 181 et seq.

The Corporation Commission of the State of Oklahoma issued its Order by which the Tonkawa formation underlying said oil and gas leases was forced pooled and pursuant thereto the working interests under said leases as to said formation are now owned by the defendant Phillips Petroleum Company.[1] The force pooling statutes of Oklahoma have been held a constitutional exercise of the police power of the State in the interest of oil and gas conservation and prevention of waste. Anderson v. Corporation Commission, 327 P.2d 699, cert. denied 358 U.S. 642, 79 S.Ct. 536, 3 L.Ed.2d 567 (1959).

The Plaintiffs assert herein that said forced pooling Order of the Oklahoma Corporation Commission is void as to their working interests in the Tonkawa formation because the lands involved to

---

1. Under Oklahoma law any lessee in a drilling and spacing unit can initiate a force pooling request before the Oklahoma Corporation Commission. If a lessee elects not to participate in the cost of drilling the well he is compensated by a monetary bonus determined by the value of his interest in the formation involved and his working interest therein is transferred by operation of law to the one initiating the forced pooling proceeding. Royalty interests are not affected by this proceeding.

which their oil and gas leases pertain belong to the United States and that by virtue of Article IV, Section 3, Clause 2 of the United States Constitution, Title 30, United States Code, Sections 181, 184, 187a and 188 (Federal Mineral Leasing Act of 1920, as amended), and certain rules and regulations promulgated by the Secretary of the Interior (Title 30, Chap. II, Code of Federal Regulations (Revised as of January 1, 1967), Section 221), exclusive control over said lands resides in the United States Government to the exclusion of the State of Oklahoma. Plaintiffs request that their title in said lands be quieted by declaring said Oklahoma Corporation Commission Order to be null and void.

■ Jurisdiction is present in this Court by reason of a substantial controversy between the parties which arises under the above mentioned clause of the United States Constitution, the above enumerated statutes of the Federal Mineral Leasing Act of 1920, as amended, and said rules and regulations of the Secretary of the Interior. 28 U.S.C. § 1331 (a). The Court finds the required jurisdictional amount to be involved.

The Defendant by way of defense herein asserts that this identical matter in controversy has been decided in favor of the Defendant in a decision by the Chief, Branch of Minerals Adjudication, Bureau of Land Management, Department of the Interior, United States of America; that if this action is an attempt to accomplish a judicial review of the above decision the same is improper as all administrative remedies were not exhausted by the Plaintiffs; that said administrative proceedings undertaken by Plaintiffs constituted an election of remedies and is a bar to this proceeding; that the Secretary of the Interior as the appropriate representative of the United States is an indispensable party and has not been joined herein; that the Plaintiff John H. Hill, an individual, is not a real party in interest; that the owner of the leasehold estates involved herein failed to appeal from the forced pooling Order of the Oklahoma Corporation Commission, and Plaintiffs, as successors in interest, are now estopped to proceed in this Court to attack said Order; that the Plaintiffs have acquired their interests at such time as to condemn them as not proceeding herein with clean hands; that the United States of America has approved the communitization of the leases involved and the Plaintiffs are bound thereby; that the Oklahoma Corporation Commission had jurisdiction to space federal lands and force pool the interest of federal lessees therein; that if the Federal Government by action of the Congress has exercised any controls in this regard, the same have been fully satisfied in this case; that in either of the foregoing events the forced pooling Order of the Oklahoma Corporation Commission herein is valid; that the Plaintiffs have no standing to assert or utilize any of the powers or prerogatives of the Federal Government and collaterally attack herein said forced pooling Order; that Plaintiffs' action for one or all of the above reasons should be dismissed, and by counterclaim filed herein the Defendant asks that its title and interest in the lands involved be quieted against both Plaintiffs.

Article IV, Section 3, Clause 2 of the United States Constitution provides:

"Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; * * *."

■ This clause does not place the exclusive control of the federal public domain in the United States Government. It only confers this power on Congress and leaves to Congress the determination of when and where and to what extent this power will be exercised. United States v. Hatahley, (10 Cir. 1955), 220 F. 2d 666, reversed on other grounds, 351 U. S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956). Therefore, we must look to the acts of Congress and specifically those relied upon by the Plaintiffs as above set out to ascertain if the Congress has undertaken to exercise exclusive control over federal lands which have been leased

by the Government for oil and gas mining purposes.

Nothing in these cited statutes (nor the entire Act itself) specifically indicates that Congress has undertaken to reserve unto itself exclusive control over federal lands leased for oil and gas development to the exclusion of the States.

■ Section 187 does provide that no lease issued under the said Act shall be assigned or sublet except with the consent of the Secretary of the Interior, and authorizes the Secretary of the Interior to promulgate rules for the prevention of undue waste and that the lease shall contain a provision that such shall be observed. However, said Section further provides at the end thereof that: "None of such provisions shall be in conflict with the laws of the State in which the leased property is situated." This language is not aimed at putting the lands under the exclusive control of the Federal Government to the exclusion of the States. Contrary to the position of the Plaintiffs, the Federal Mineral Leasing Act of 1920, as amended, seems to leave to the States the power to exercise State police power over Federal oil and gas leases. For instance, Title 30, United States Code, Section 189 of said Act provides:

"Nothing in said sections shall be construed or held to affect the rights of the States or other local authority to exercise any rights which they may have, including the right to levy and collect taxes upon improvements, output of mines, or other rights, property, or assets of any lessee of the United States."

■ Furthermore, the authorities treating with the matter of exclusive control of federal lands by the Federal Government clearly and definitely hold that State law and the State police power extends over the federal public domain unless and until Congress has determined to deal exclusively with the subject. State of Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927 (1925); McKelvey v. United States, 260 U.S. 353, 43 S. Ct. 132, 67 L.Ed. 301 (1922); International Bridge Company v. People of the State of New York, 254 U.S. 126, 41 S.Ct. 56, 65 L.Ed. 176 (1920); Omachevarria v. State of Idaho, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763 (1918); United States v. Hatahley, supra.

■ But whereas the Congress may not desire to assume exclusive control over the federal lands it may desire to prescribe certain limited controls. From an examination of the said Federal Mineral Leasing Act the Court concludes that the Congress has not undertaken to assume exclusive control of federal mineral lands under the Act but it has imposed two significant controls which must be satisfied before the State police power in the area of conservation may ultimately attach. One is that a federal mineral lessee may not assign his lease without the consent of the Federal Government. 30 U.S.C. § 187. Another is that a pooling or communitization agreement involving federal and non-federal lands must be approved by the Federal Government. 30 U.S.C. § 226(j). The forced pooling Order involved herein, with no election being made by the federal lessee to participate in the cost of drilling the well, did effect the transfer or assignment of the working interests involved herein to the Defendant by operation of law for the prescribed monetary bonus and did bring about a communitization or pooling of the leaseholds in the spacing unit as to the Tonkawa formation. However, the evidence herein reveals without dispute that the federal government approved the transfer of the working interests involved herein to the Defendant by the forced pooling Order of the Oklahoma Corporation Commission and approved the communitization of the leases in the spacing unit prescribed by the Oklahoma Corporation Commission. Thus, these limited controls established by Congress have been fully satisfied in this case.

■ Plaintiffs have pointed to a number of regulations [2] promulgated by the Secretary of the Interior which pertain in a general way and to a certain extent to matters of conservation in the production of oil and gas. Plaintiffs assert that these regulations supplement the Federal Mineral Leasing Act of 1920 and support and justify their position that the Federal Government has undertaken to assume exclusive control over federal mineral lands. But the regulation making power of the Secretary of the Interior, in so far as the Federal Mineral Leasing Act is concerned, is contained in Section 189 of Title 30, United States Code, which section, as above stated, provides that nothing in the sections referred to and to which the Secretary of the Interior may promulgate regulations shall be construed or held to effect the rights of the States or other local authority to exercise any rights which they may have. This limitation on the construction of the sections must also apply to any regulations made by the Secretary of the Interior to do any and all things necessary to carry out and accomplish the purposes of said sections. This is to say that since Congress has said that the pertinent sections of the Federal Mineral Leasing Act which it passed shall not be construed to affect the rights of the States or other local authority to exercise any rights which they may have, this must likewise be a limitation on the Secretary of the Interior as to his regulation making authority set out in the same section. It is also significant to note that said regulations were not promulgated exclusively on the authority of the Federal Mineral Leasing Act. They are also founded on authority of 25 U.S.C. §§ 356, 397, 398, 396d dealing with the leasing of Indian lands for oil and gas purposes, 30 U.S.C. § 306 dealing with the leasing of oil and gas deposits under railroads and other right of way, and 30 U.S.C. § 359 dealing with the leasing of mineral deposits within acquired lands of the United States (lands to which the Mineral Leasing laws have not been extended).

■ Moreover, these regulations provide in section 221.4 that the supervisor [3] is authorized to require compliance with the regulations but that inasmuch as conditions in one area may vary widely from conditions in another area, the regulations are general, and detailed procedure thereunder in any particular area is subject to the judgment and discretion of the supervisor, and to any areal plan of development that may be adopted pursuant to law. A forced pooling order based on a spacing order of the Oklahoma Corporation Commission would be an areal plan of development adopted pursuant to law. Therefore, any detailed procedure under the regulations is subject thereto. Any doubt in this connection is completely dispelled by the approval of the forced pooling order by the Federal Government.

The Court, therefore, concludes that the cited regulations do not apply in this case so as to affect the rights of the State of Oklahoma which cover the same subject matters. These regulations might apply in those States which do not have acceptable conservation laws, perhaps to off-shore drilling and other situations. But by the provisions of the Federal Mineral Leasing Act and the limitation therein that the pertinent sections may not affect State rights, by provisions in the regulations themselves, and the act of the Federal Government in approving the spacing and forced pooling orders of the Oklahoma Corporation Commission in this case, it is concluded that the cited regulations must be so treated.

No cases have been presented or found which hold that the Federal Government through the Congress has determined

2. These are C.F.R. Title 30, Chapter II, Sections 221.1, 221.2(n) (1) & (2), 221.5, 221.35, 221.4, 221.20, 221.21, 221.-58(a) (e), 221.59, 221.22, 221,26, 221.15, 221.36, 221.27, 221.23, 221.34, 221.61 and 221.32.

3. The supervisor is a representative of the Secretary of the Interior authorized and empowered to supervise and direct oil and gas operations and to perform other duties prescribed in the regulations.

that it will deal exclusively with lease-hold interests granted or created pursuant to the Federal Mining Leasing Act of 1920, as amended, and the case of Wallis v. Pan American Petroleum Corp., 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966), holds that State law applies to such leaseholds where no significant threat to any identifiable federal policy or interest is shown. No such threat can be seen herein in view of the aforementioned approvals granted by the Federal Government which satisfy the federal policy and interest that assignments of federal leases and pooling or communitization of federal leases with non-federal leases must be approved by the Federal Government. Moreover, no threat can be seen to the royalty interest of the Federal Government in the lands involved by reason of the forced pooling order since its proportionate share will be received thereunder.

The cases relied upon by Plaintiffs,[4] which deal with attempted State taxation of federal land and interference with the interests of the Federal Government in its lands, are not in point.

The clause of the Constitution and the Federal Statutes and Regulations relied upon by the Plaintiffs contain no specific prohibition against the exercise of the State police power over the working interests of the Plaintiffs in the lands involved. Nor do they evince a Congressional intent to exercise exclusive control over the same. Congress has required federal approval of assignments of its leases and communitization agreements involving its lands with non-federal lands. In this case this approval has been granted.

The Oil and Gas Conservation laws of Oklahoma, including the forced pooling Order involved herein, therefore, apply to the federal lands dealt with herein. In view of this determination, it is unnecessary to treat with the other defenses raised herein.

Therefore, judgment should be entered dismissing the action of the Plaintiffs for failure to assert a claim upon which relief may be granted. Judgment should also be entered on the Counterclaim of the Defendant quieting its title and interest in the lands involved against the Plaintiffs. Counsel for Defendant will prepare an appropriate judgment for signature by the Court.

---

4. These cases are:
    Van Brocklin v. Anderson, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845 (1886);
    Utah Power and Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917).